PEOPLE *v.* WOODWARD.

1. ARREST—WARRANT—BREACH OF THE PEACE—RIGHT TO ENTER DWELLING AND MAKE ARREST.

Where police officers heard noises in a house indicating that a breach of the peace was being committed, they had a right, without a warrant, to enter through an unfastened door and arrest the persons engaged therein in their presence.

2. SEARCHES AND SEIZURES—INTOXICATING LIQUOR—CRIMINAL LAW —SEARCH WARRANT—CONSTITUTIONAL LAW.

Officers who lawfully gained admission into defendant's house to quell a disturbance of the peace had a right to arrest him for illegal possession of intoxicating liquor in their presence, and seize a bottle of whisky standing on the table in front of him as evidence thereof, although they had no search warrant and no warrant for his arrest; their action not constituting a violation of the provisions of the Federal and State Constitutions forbidding unreasonable searches and seizures.

3. INTOXICATING LIQUOR—CRIMINAL LAW—ILLEGAL POSSESSION— EVIDENCE—BURDEN OF PROOF.

In a prosecution for illegal possession of intoxicating liquor, where defendant claims lawful possession in that he obtained it before the prohibition act became a law, the burden of proof is on him to show that his possession was lawful.

4. SAME—ILLEGAL POSSESSION IN HOME A FELONY.

Defendant's unlawful possession of intoxicating liquor in his home constituted a felony no less than if the illegal possession had been in any other place.

5. SAME—VIOLATOR IN HOME NOT IMMUNE FROM LAWFUL ARREST.

Although the prohibition law forbids the search of a private dwelling unless some part of it is used for other purposes therein specified, it in no way renders the owner immune from arrest or punishment for its violation therein if such arrest be lawfully made, nor does it render

On liability of officer for making arrest for breach of the peace, without a warrant, see note in 51 L. R. A. 206.

On right of peace officer to enter dwelling to make arrest without a warrant, see note in 16 L. R. A. 500.

the evidence of the commission of the crime immune from seizure where no search is needed to discover it.

6. SAME—NO PROPERTY RIGHT IN INTOXICATING LIQUORS—WHERE POSSESSION ILLEGAL SHOULD NOT BE RETURNED BY ORDER OF COURT.

In view of Act No. 336, Pub. Acts 1921, amending the prohibition law (Act No. 338, Pub. Acts 1917), providing that no property right shall exist in any intoxicating liquor unlawfully possessed, and making it the duty of police officers to arrest violators in their presence, the trial court should not make an order to restore possession of liquor seized when the effect thereof would be to render the person in possession liable to arrest and conviction by reason of his possession of the liquor so restored.

FELLOWS, C. J., and WIEST and BIRD, JJ., dissenting.

Exceptions before judgment from Ingham; Carr (Leland W.), J. Submitted January 13, 1922. (Docket No. 159.) Decided December 5, 1922.

Frank Woodward was convicted of violating the liquor law. Affirmed.

*D. G. F. Warner* and *Frank L. Dodge* (*John F. Berry*, of counsel), for appellant.

*Merlin Wiley*, Attorney General, *J. A. Boice*, Prosecuting Attorney, and *W. S. Seelye*, Assistant Prosecuting Attorney, for the people.

SHARPE, J. The defendant was convicted of having intoxicating liquor in his possession in violation of section 2 of Act No. 338, Pub. Acts 1917, as amended by Act No. 53, Pub. Acts 1919. He was arrested in his own home. The officers who made the arrest were sent there by the lieutenant in charge of the police station. They were not permitted to disclose the information imparted to them. They arrived there about 2:30 a. m. We quote from the testimony of Officer John Rehm:

"*Q.* Upon arriving there, what did you discover? When you first got there, what did you do?

"*A.* I hesitated.

"*Mr. Dodge:* What's that word?

"*Mr. Boice:* He says he hesitated.

"*A.* What's that?

"*Q.* Go ahead.

"*A.* Kind of took a survey of the land and found this boisterous talking and fighting and cussing and swearing.

"*Q.* Where did you hear that from?

"*A.* From the front of the first house before we got to 503.

"*Q.* Before you got to 503 you heard this wrangle?

"*A.* Yes.

"*Q.* What were they talking about?

"*A.* About fighting.

"*Q.* Were they threatening one another?

"*A.* Yes.

"*Q.* How long did this disturbance continue?

"*A.* Until we got inside of the house.

"*Q.* How long was it before you went in the house?

"*A.* About 3:40.

"*Q.* You remained there near the place listening?

"*A.* Yes.

"*Q.* Why did you go in the house?

"*A.* In order to stop this argument; they was threatening to kill each other.

"*Q.* Were you fearful they would?

"*Mr. Dodge:* Wait a moment; that's not proper.

"*Q.* What caused you to think there was danger there of their killing one another?

"*A.* When they talked.

"*Q.* Were they threatening one another?

"*A.* Yes.

"*Q.* How did you get in?

"*A.* At the rear door.

"*Q.* Was there conversation—did it continue loud enough to be heard around the neighborhood as it was when you first went there?

"*A.* Yes.

"*Q.* When you got in there what did you find?

"*A.* We found four men in the dining room, one lying in a pool of blood.

"*Q.* Near what—

"*A.* Lying on the floor in a pool of blood.

"*Q.* Who was that?

"*A.* Harris—William Harris.   William Cheek was sitting at the table, Frank Woodward was sitting at the table, and Tom McNamara was standing up.

"*Q.* What did you do with Tom McNamara and William Harris?

"*A.* I brought them to the station.

"*Q.* Did you bring a charge against them?

"*A.* Drunk and disorderly. .

"*Q.* Do you know what became of that?

"*Mr. Dodge:* That is immaterial.

"*The Court:* Strike it out.

"*Q.* What did you do with Mr. Woodward?

"*A.* Brought him to the station, also.

"*Q.* I ask you if you recognize that bottle (pointing to bottle on table)?

"*Mr. Dodge:* At this time I want to interpose an objection to the introduction of the liquor in question.

"*The Court:* The objection will be overruled.

"Exception for defendant.

"*Q.* What is that bottle?

"*A.* Whisky.

"*Q.* Well, it is a bottle of whisky and where did you first see it?

"*A.* I found it on the table in front of Mr. Woodward.

"*Q.* When you went in?

"*A.* Yes.

"*Q.* Where was Mr. Woodward sitting?

"*A.* On the south side of the table.

"*Q.* Where did you say Woodward was when you went in there?

"*A.* Sitting at the south side of the table.

"*Q.* This bottle was in front of him?

"*A.* Yes."

He further testified that it was an "Imperial whisky bottle, only partly full of Gugenheim & Wurts." His testimony was fully corroborated by Officers Berger and Elliot.   The officers placed two of the men in the house under arrest on a charge of being drunk and disorderly.   They were not permitted to testify to the

result of these arrests. They also arrested the defendant. The reason therefor is not fully disclosed, but the complaint afterwards made against him justifies the conclusion that his arrest was for illegally having intoxicating liquor in his possession. After arraignment and plea of not guilty, defendant's counsel moved for a return of the liquor for the reason that its possession had been secured by an illegal search and seizure. This motion was denied, as was also a motion to quash, based on substantially similar grounds. On the trial, the bottle was received in evidence. Defendant here reviews his conviction on exceptions before sentence. The assignments all relate to the action of the court in refusing to order the liquor returned to defendant and in admitting it in evidence.

While counsel refer to the search whereby other bottles of liquor were found in the basement of the house, it will be observed, from the testimony quoted, that no reference was made to them by the prosecuting attorney but the facts relating to such search were brought out on the cross-examination of the officers by defendant's counsel. Only the bottle found on the table was introduced in evidence.

The questions presented are, Were the officers justified in entering defendant's home? Had the officer the right to arrest the defendant and take possession of the bottle of whisky? Was it properly received in evidence on the trial?

1. Counsel for defendant do not seem to seriously contend that the officers were not justified in entering defendant's residence for the purpose of quelling the disturbance therein. Their neglect to have done so, under the circumstances, would have rendered them recreant to their duty as conservators of the peace. In *Commonwealth* v. *Tobin,* 108 Mass. 426 (11 Am. Rep. 375), it was held (we quote from the syllabus):

"A. constable has a right, by virtue of his office, without a warrant, to enter, through an unfastened door, a house in which there is a noise amounting to a disturbance of the peace, and arrest any person disturbing the peace there in his presence."

See, also, 5 C. J. p. 427, and cases cited; Tiffany's Criminal Law (5th Ed.), p. 97.

The conditions existing when they entered show clearly that the conclusion they had arrived at from what they had heard outside that a breach of the peace was being committed was well founded.

2. On lawfully entering, the officers quelled the disturbance by arresting the men causing the same. They then discovered the bottle of whisky standing on the table in front of the defendant, who sat in a chair. It was labeled "Imperial Whisky," "Gugenheim & Wurts." The cause of the disturbance and the condition of the men arrested also clearly indicated the nature of its contents. The duty of the officers with these facts before them is plainly pointed out by the statute. As several of the provisions of the prohibition act (Act No. 338, Pub. Acts 1917, as amended by Act No. 336, Pub. Acts 1921), are pertinent to the consideration of this question, we quote from section 31 at some length:

"No property right of any kind shall exist in any intoxicating liquors had, kept, transported or possessed contrary to law or in or to any receptacle or container of any kind whatever in which said liquors may be found and all such are hereby declared forfeited to the State and shall be seized. Any person or persons in charge of said liquors or aiding in any manner in such violation shall forthwith be arrested and as soon as convenient taken before a magistrate having jurisdiction whereupon the officer making such arrest shall make and file a complaint for such violation of the law as the evidence justifies. * * * *Any officer making an arrest for any violation of this act, may seize all evidence of the commission of such violation,* including any wagon, buggy, automobile,

water or aircraft, or other vehicle or conveyance in which such liquors are had, kept, transported or possessed contrary to law.  *  *  *  Any claimant of liquors, receptacles or containers seized under this act, in order to release the same from the operation of this act, may, at any time before final disposition thereof by the court as herein provided, file a petition in the court having jurisdiction of the matter for the return of said property and if said claimant shall prove to the satisfaction of said court that he is lawfully entitled to possession thereof, the same shall be returned to him."

The officer did just what the statute permits, if not commands, him to do.   Being lawfully in defendant's dwelling, he found the defendant violating the law in his presence by having this bottle of whisky in his possession.   He arrested the defendant and, as further permitted by the statute, he took possession of (seized) the bottle as evidence of the "commission of such violation."   The defendant made no claim that he was lawfully in possession of the liquor.   Had he claimed that he had obtained possession of it before the prohibition act became a law, the burden was on him to make good such claim.   *People* v. *Grabiec,* 210 Mich. 559.

It is insisted that as section 30 of the act, as amended, prohibits the issue of a search warrant to search a private dwelling, the officers were not justified in what they did; that their action was in effect the search of defendant's home and a violation of this section and of the provisions of both the Federal and State Constitutions forbidding unreasonable searches and seizures

The unlawful possession of this bottle of whisky by the defendant was a felony under the statute.   It was conceded by his counsel that it belonged to him.   Can it be said that its possession by him in his home relieved such possession of its criminality?   If a man has intoxicating liquor in his possession unlawfully in

his dwelling house, is he any less a violator of the law than if such possession be had in a soft drink parlor, in his store or in his club? Morally, there is no distinction in his culpability.

From time immemorial a man's dwelling house has been deemed sacred. It is the one spot from which he may exclude all persons whom he does not wish to enter. They may not lawfully do so unless armed with legal process or unless there be such a disturbance therein as amounts to a breach of the peace. When these officers entered defendant's home and quelled the disturbance, the existence of which justified their entry, might they not use their eyes and observe what was to be seen? Had they found the defendant making counterfeit money, or committing a rape on a female child, or engaged in an act of gross indecency, or committing or attempting to commit any other felony, would they have been required to secure a warrant before making an arrest? Clearly not. As conservators of the peace, the duty to arrest would have been plain. They discovered the defendant committing a felony. No search was needed to establish the fact. The bottle and the surroundings were evidence thereof. They took him into custody. Were they then required to secure a search warrant before they could take possession of the bottle of whisky, the mute witness of his criminality? No search was needed to discover it. The bottle stood in plain view. No examination or inspection was needed to ascertain its contents. Had they discovered him making counterfeit money or preparing explosives, it seems clear to me that after making the arrest it would have been their duty to have taken possession of all articles or objects then present and in their immediate view which tended to establish the violation of the law on which the arrest was predicated. I can see no distinction in respect of the right claimed between vio-

lators of the prohibition statute and any other statutory law.   If a man has liquor in his private residence and has the right to have it there, he need have no fear of an invasion of his personal or constitutional rights by officers lawfully entering therein.   As was said in *Adams* v. *New York*, 192 U. S. 585 (24 Sup. Ct. 372):

"Innocent persons would have no trouble in explaining the possession of these tickets (lottery)."

But, if his possession be unlawful, he must, to secure unto himself the protection against search and seizure afforded him by law, keep such liquor in a place in the house where it will not disclose to officers lawfully therein that he is violating a criminal statute.   The prohibition law imposes a duty on officers to arrest any person violating its provisions in their presence and if they obtain lawful entrance into the home they should be commended for performing such duty.   In its wisdom the legislature has forbidden the search of a private dwelling unless some part of it is used for other purposes therein specified.   The statute goes no further.   It in no way renders the owner while therein immune from arrest or punishment for a violation of the statute if such arrest be lawfully made.   Nor does it render the evidence of the commission of the crime immune from seizure where no search is needed to discover it.

The subject of illegal searches and seizures is discussed at length in *People* v. *Case, ante,* 379, and in *People* v. *DeCesare, ante,* 417.   What is said to be the leading case on the subject is *Boyd* v. *United States*, 116 U. S. 616 (6 Sup. Ct. 524).   The quotation therefrom by Mr. Justice Steere in *People* v. *Case, supra,* may be here read with profit.   The holding in that case is commented on by Mr. Justice Day in the later case of *Adams* v. *New York, supra.*   We quote therefrom:

"But the contention is that, if in the search for the instruments of crime, other papers are taken, the same may not be given in evidence.   As an illustration, if a search warrant is issued for stolen property and burglars' tools be discovered and seized, they are to be excluded from testimony by force of these amendments.   (Those relating to search and seizure.)   We think they were never intended to have that effect, but are rather designed to protect against compulsory testimony from a defendant against himself in a criminal trial."

He cites and quotes approvingly from *Commonwealth* v. *Tibbetts*, 157 Mass. 519 (32 N. E. 910).   In that case, while acting under a warrant to search for intoxicating liquors, the officers found and took possession of certain instruments adapted to procure abortion.   These the prosecution sought to introduce as evidence.   The court said:

"But two points have been argued.   The first is that the criminatory articles and letters found by the officer in the defendant's possession were not admissible in evidence, because the officer had no warrant to search for them, and his only authority was under a warrant to search her husband's premises for intoxicating liquors.   The defendant contends that under such circumstances the finding of criminatory articles or papers can only be proved when by express provision of statute the possession of them is itself made criminal.   This ground of distinction is untenable. Evidence which is pertinent to the issue is admissible, although it may have been procured in an irregular or even in an illegal manner.   A trespasser may testify to pertinent facts observed by him, or may put in evidence pertinent articles or papers found by him while trespassing.   For the trespass he may be held responsible civilly, and perhaps criminally; but his testimony is not thereby rendered incompetent."

A number of authorities are cited to sustain the holding.   See, also, *Commonwealth* v. *Acton*, 165 Mass. 11 (42 N. E. 329) ; *Commonwealth* v. *Smith*, 166 Mass.

370 (44 N. E. ₒ03). In *State* v. *Barr,* 78 Vt. 97, 101 (62 Atl. 43), it was said:

"It is contended that the several searches of the respondent's premises were illegal, and that therefore it was error to allow the officers to testify to what they saw there while making them, as that was compelling the respondents to furnish evidence against themselves. But this question was ruled the other way in *State* v. *Krinski,* 78 Vt. 162 (62 Atl. 37). The same thing is held in *Commonwealth* v. *Hurley,* 158 Mass. 159 (33 N. E. 342)."

I find no authority which denies to officers lawfully making an arrest the right to take possession of things in plain sight, belonging to the person arrested, which are in themselves evidence of the commission of the crime for which the arrest is made.

It will be noticed that in the *Tibbetts Case* defendant's counsel apparently conceded that the articles should be received in evidence if by statute the possession of them is itself made criminal. Our statute as above quoted so provides and the claim here made will, we think, be considered novel by students of criminal procedure.

*Taylor* v. *Isabella Circuit Judge,* 209 Mich. 97, is relied on to sustain the motion made for the return of the liquor. In that case it is said:

"It is conceded that plaintiff purchased the liquor before the act in question took effect."

Before the motion for its return had been made, the defendant had been acquitted of the charge of violating the law preferred against him. It was further said:

"When the prosecutions were ended and the people had failed to secure a conviction, and no new complaint was filed within 24 hours, it was the plain duty of defendant to order it returned to plaintiff."

Following this decision, the amendatory act of 1921, from which we have quoted, was enacted.

It will be seen that "no property right of any kind shall exist in any intoxicating liquors" possessed contrary to the provisions of the act. The language of the latter part of the quotation is also suggestive, if not conclusive, of defendant's right to a return of the liquor seized. To entitle him thereto he must "prove to the satisfaction of said court that he is lawfully entitled to possession thereof." While it may be urged that this provision applies only to liquor lawfully seized and motion made for return after the trial, it indicates the intention of the legislature that when no property right exists in intoxicating liquor, owing to its being unlawfully possessed, a defendant seeking its return must show a lawful right to its possession. Had it been so returned, as soon as it was in the possession of the defendant he could have been arrested; in fact, if such return were made in the presence of the sheriff or other peace officer, it would have been his duty to forthwith arrest the defendant for a violation of the act. In the *Taylor Case* it appeared that the defendant was lawfully entitled to the possession of the liquor. In my opinion, the court should not make an order to restore possession of liquor when the effect thereof would render the person in possession liable to arrest and conviction by reason of his possession of the property restored.

The judgment is affirmed.

MCDONALD, CLARK, and STEERE, JJ., concurred with SHARPE, J. MOORE, J., concurred in the result.

BIRD, J. (*dissenting*). I am not in accord with the opinion written by Mr. Justice SHARPE in this case. I am of the opinion that the bottle of whisky which was seized at defendant's home was improperly admitted in evidence, owing to the fact that it was il-

legally seized. Attempt is made to justify the officers in seizing the whisky on the ground that they went into the house to quell a disturbance, and saw the bottle on the table without searching for it. If it were necessary for the six officers to go into the house for the purpose of quelling a disturbance, they were not authorized to go beyond that and search the premises for intoxicating liquors. When once inside, and after they had discovered the one bottle on the table, they proceeded to search the house and in the cellar found five bottles more. This pretty clearly indicates their purpose in going to defendant's home. The testimony and acts of the three officers, who testified, is persuasive that their visit there was not to quell a disturbance but to search defendant's house for intoxicating liquor. But if we assume they entered for the purpose stated by them, did they, while in defendant's home on that mission, have a right to search for and seize intoxicating liquors? Had they gone to a justice of the peace and requested a search warrant to search defendant's home, it would have been denied, because the law forbids it. (Act No. 53, Pub. Acts 1919, § 30). Could they enter defendant's house for the purpose of quelling a disturbance and then do indirectly what the law would not approve of if done directly? If this is permissible, a deputy sheriff could call upon a citizen to summon him to court to act as a witness or juror, and when once inside his home, if, by chance, he should see a bottle of whisky on a shelf or sideboard, he could seize the whisky and lug both him and the whisky to jail. And when the officer's right to do this was contested he could reply that he discovered the whisky without searching while he was legally on the premises for another purpose. The mere fact that the act of the officer was a clear invasion of the right of the sacredness and privacy of the home would be a matter of

no consequence. And this same thing would be true if an officer should stroll into one's house without invitation through an open door on a summer's night. This is altogether too narrow a construction to give the constitutional provision against unreasonable searches and seizures. The idea back of the constitutional provision prohibiting unreasonable searches and seizures was to preserve the sacredness and privacy of a man's home, his person, papers and possessions.

It is quite evident this narrow construction of the Constitution was not in the mind of Mr. Justice Bradley when he said in the *Boyd Case,* 116 U. S. 616 (6 Sup. Ct. 524):

"The principles laid down in this opinion affect the very essence of constitutional liberty and security. They reach farther than the concrete form of the case then before the court, with its adventitious circumstances; they apply to all invasions on the part of the government and its employees, of the sanctity of a man's home and the privacies of life. It is not the breaking of his doors, and the rummaging of his drawers, that constitute the essence of the offense; but it is the invasion of his indefeasible right of personal security, personal liberty and private property," etc.

On a motion in arrest of judgment in a similar case where a like contention was made in the Ingham circuit court, Mr. Justice WIEST, while sitting in the circuit court, made the following observations:

"The purpose of a search warrant under the liquor law is to obtain evidence. The liquor law itself prohibits the issuance of a search warrant to search a private dwelling house. If a search warrant had been issued and the evidence here offered had been seized thereunder, such seizure would have been unlawful and, upon motion, the court would have suppressed the evidence. If the security of the home may be invaded by police officers upon a suspicion that a bottle upon a table in view contains whisky, and that a liquid in a glass is whisky, then it is a farce to say in the

law that no warrant shall issue to search a private dwelling. * * *

"It is idle to say that the view of the officers disclosed the commission of a felony being committed in the house and, therefore, they could enter and search and seize. Where does the law say that they may so enter a private house? I can find where the law says most emphatically that they shall not be given a warrant to do so, but I am unable to find any process of reasoning open to me that what the officer is forbidden to have a warrant to do he may do without a warrant and have his acts sanctioned as within the law."

If the narrow construction contended for is to prevail, then the constitutional provision against unreasonable searches and seizures is of no value. All an officer will have to do is to gain admission to the home by some subterfuge, or walk in when the outer door happens to be open, and when once inside, if he can discover on the table, mantel, sideboard, or any other place in view, any intoxicating liquor, he can seize it and arrest the owner for having it in his possession. When this can be successfully done and sanctioned by the courts, the constitutional provision against unreasonable searches and seizures will be composed of meaningless words.

But it is said by the officers that they did not have to search for the bottle of whisky; it was on the table in plain sight. Upon this slender thread the whole case against defendant hangs. Does the fact that very little search had to be made to find it make it any less a search? After they saw the bottle on the table they did not know what it contained. It had to be, and was, examined and inspected by them to determine what it contained, a brief inspection perhaps, but it was an inspection. It will hardly do to say that an officer may seize liquor in one's home if it is in sight, but not if it is hidden away in a locker. Ruling Case Law says:

"An unreasonable search is *an examination or inspection* without authority of law of one's premises or person, with a view to the discovery of stolen, contraband or illicit property, or for some evidence of guilt, to be used in the prosecution of a criminal action." 24 R. C. L. p. 717.

Does not this definition cover exactly what was done in the present case? The bottle was discovered and an examination took place. It was inspected to see whether it was whisky, for the purpose of using it as evidence in a criminal prosecution. This was a thing they had no right to do and they could have secured no civil or criminal process which would have permitted them to do it. The effect of the argument of the prosecutor is that the officers have no right to enter defendant's house for the purpose of searching for intoxicating liquor, but if they go into his home for another purpose, or obtain admission by subterfuge, when once in they can violate his constitutional rights with impunity. Again, it is said the officers were justified because they saw it without searching—the narrowest possible construction which could be placed upon the language of the Constitution. They refuse to consider that the owner of the home has private rights and that what was done by them was a clear invasion of these rights which are guaranteed to him by the Constitution and a violation of them forbidden by the statute.

Another thing that is worthy of mention in connection with the trial of this cause: The defendant was informed against in the circuit court for having in his possession six bottles of whisky. The whisky was brought in and placed upon a table in court. It was shown that the whisky was gotten from defendant's home. During the trial the six bottles of whisky were referred to by counsel, and also by the court. When the court charged the jury he repeated that part of the information which alleged that defend-

ant had in his possession six bottles of whisky. He made no explanation to them that they could not consider the seizing of the five bottles, nor did he call the attention of the jury to the fact that the five bottles were not introduced in evidence. For all practical purposes the prosecution had the benefit of these five bottles of whisky as evidence, as well as the one bottle. The trial court should have explained to the jury that the five bottles were not in evidence and that they could not consider the act of the officers in searching for and seizing them in defendant's cellar, because they were unlawfully seized.

For the error of the trial court in admitting the bottle of whisky in evidence, the judgment should be set aside and a new trial ordered.

FELLOWS, C. J. (*dissenting*). Substantially all of the arguments advanced by Justice SHARPE to sustain the right of seizure without a warrant in the instant case were urged upon the Supreme Court of the United States in *Gouled* v. *United States,* 255 U. S. 298 (41 Sup. Ct. 261), and were rejected by that court. The opinion of that court and the former opinions of this court should not, in my judgment, be brushed aside and those of other State courts followed upon constitutional questions which have been settled by that court as well as by this court. Entertaining this view, I am constrained to dissent from the opinion written by Justice SHARPE and to agree with the one written by Justice BIRD.

WIEST and BIRD, JJ., concurred with FELLOWS, C. J.