### ROUDA et al. v. UNITED STATES.

(Circuit Court of Appeals, Second Circuit. March 1, 1926.)

### No. 317.

1. **Intoxicating liquors** ⊙⇒236(19)—**Evidence held to sustain conviction for manufacturing liquor (National Prohibition Act [Comp. St. Ann. Supp. 1923, § 10138¼ et seq.]).**

Evidence *held* sufficient to sustain conviction for manufacturing liquor, in violation of National Prohibition Act (Comp. St. Ann. Supp. 1923, § 10138¼ et seq.).

2. **Criminal law** ⊙⇒878(1).

Conviction on count for possessing intoxicating liquor was illegal, where all elements necessary to it were included in another count for manufacturing, on which accused was convicted.

3. **Intoxicating liquors** ⬡⟹249—Defendants may not question whether federal officer's entry into building, in basement of which defendants were manufacturing liquor, was lawful, as not being trespass on premises occupied by defendants.

Defendants, unlawfully engaged in manufacturing liquor in basement of hosiery shop, cannot question whether entry of federal officer into hosiery shop and descent to basement, where defendants were manufacturing liquor, was lawful, as not being trespass on premises occupied by defendant.

4. **Criminal law** ⬡⟹394.

Evidence secured by unlawful search of premises not occupied by defendants is competent.

5. **Criminal law** ⬡⟹321—Search warrant which was lost, will be presumed to have been properly drawn in form of law, in accordance with what was called for in affidavit.

Where affidavit for search warrant, which was afterwards lost, called for search of basement of building, as well as building itself, it will be presumed that search warrant was properly drawn in form of law, and included the basement.

6. **Searches and seizures** ⬡⟹3—Entry and arrest held lawful, where affidavit for search was made by federal officer after entry on defendants' premises, since he had previous knowledge sufficient for warrant.

Where federal officer, after entering on premises occupied by defendants, had made affidavit for search warrant, *held*, that entry and arrest were lawful, in view of fact that officer had sufficient knowledge, before making entry, on which to base affidavit.

7. **Arrest** ⬡⟹63(3)—Prohibition officer had power to arrest defendants, engaged in manufacturing liquor, after entry through premises not occupied by defendant (National Prohibition Act, tit. 2, §§ 2, 3, 25, 26, 28, 38 [Comp. St. Ann. Supp. 1923, §§ 10138½a, 10138½aa, 10138½m, 10138½mm, 10138½o, 10138½y]).

Under National Prohibition Act, tit. 2, §§ 2, 3, 25, 26, 28, 38 (Comp. St. Ann. Supp. 1923, §§ 10138½a, 10138½aa, 10138½m, 10138½mm, 10138½o, 10138½y), prohibition officer had power to arrest defendants, engaged in manufacturing liquor in his presence, after entry by officers through premises not occupied by defendants.

In Error to the District Court of the United States for the Southern District of New York.

Joseph Rouda and another were convicted, under the National Prohibition Act, of manufacturing and possessing intoxicating liquor, and they bring error. Judgment on count for manufacturing affirmed, and reversed on count for possessing.

Writ of error to the District Court for the Southern District of New York upon a judgment of conviction upon an information under the National Prohibition Act (Comp. St. Ann. Supp. 1923, § 10138¼ et seq.).

The first count of the information charged the defendants with manufacturing, the second with possessing, intoxicating liquors at 624 Broadway, in the city of New York. At the trial the following facts appeared:

On June 24, 1925, one Sassi, a prohibition agent, watching outside a building on Broadway, observed a man enter on the ground floor with two five-gallon cans of alcohol. The ground floor was occupied as a hosiery store, and the man, after going in a short distance, turned to one side and disappeared down a flight of stairs. Sassi procured the assistance of another prohibition agent, Reager, and the two entered the hosiery store and went down the stairs into the basement. The front was unoccupied, but the rear had been closed off by a partition, making a room of about 35 by 40 feet. The door leading into the rear part was open, and they could see the two defendants inside. Taylor was at work pasting whisky labels on bottles, and Rouda stood beside him. In the inclosure were some large jars of whisky, and some alcohol and water. The agents entered through the door, arrested the defendants, and, while Reager detained them, Sassi went back for a search warrant. This he procured upon an affidavit stating the facts just recited, and upon his return seized the offending liquors. While he was gone, Rouda told Reager that he was the owner of the "plant."

Upon these facts, the defendants not taking the stand, the jury brought in a verdict of guilty on both counts.

The search warrant could not be found on file in the commissioner's office, and, though there was a minute of its issuance in his records, there was none of its return. Sassi swore that the warrant covered both the store and the basement; that he had taken the original back to the commissioner, and had made a return upon the back of it.

Four points are raised on this writ: First, that the original entry was unlawful; second, that the warrant was not produced, or any return filed; third, that the warrant did not justify a search of the basement; fourth, that there was no evidence of manufacture.

Herman L. Falk, Leo H. Klugherz, and Leonard A. Snitkin, all of New York City, for plaintiffs in error.

Emory R. Buckner, U. S. Atty., of New York City (Horace G. Hitchcock, Asst. U.

S. Atty., of New York City, of counsel), for the United States.

Before HOUGH, MANTON, and HAND, Circuit Judges.

HAND, Circuit Judge (after stating the facts as above). [1, 2] The evidence was sufficient to sustain a verdict upon the count for manufacturing. Taylor was found in the very act of preparing the bottles and in the midst of paraphernalia proper for making whisky out of alcohol and water. Rouda was present and by his own admission was the owner of the "plant." Nothing more probative could have been asked. The conviction upon the possession count was, however, irregular, since all the elements necessary to it were included in the count for manufacture. Reynolds v. United States, 280 F. 1 (C. C. A. 6); Morgan v. United States, 294 F. 82 (C. C. A. 4); Schroeder v. United States, 7 F.(2d) 60 (C. C. A. 2). [3] We find it unnecessary to consider whether or not the entry into the hosiery shop, the descent to the basement, and its exploration to the open door of the inclosure where the defendants were at work were lawful. If a trespass, it was not upon the premises occupied by the defendants, and they may not escape through a wrong of which they were not the victims. Agnello v. United States, 46 S. Ct. 4, 70 L. Ed. (U. S.) ——; Chicago v. United States, 284 F. 434 (C. C. A. 4); Goldberg v. United States, 297 F. 98 (C. C. A. 5); Remus v. United States, 291 F. 501 (C. C. A. 6).

[4] The imputed incompetency of evidence procured by an unlawful search is remedial (Weeks v. United States, 34 S. Ct. 341, 232 U. S. 383, 58 L. Ed. 652, L. R. A. 1915B, 834, Ann. Cas. 1915C, 1177; Silverthorne Lumber Co. v. United States, 40 S. Ct. 182, 251 U. S. 385, 64 L. Ed. 319), and no remedy can extend to wrongs done another. True, it is argued, and has indeed been held, that the remedy has in no case any relation to the wrong, taking form, as in application it does, in the victim's exoneration of a crime. But with that we have nothing to do; our only question is whether the doctrine extends to a case where the criminal has not been wronged at all. No tenable theory could support his escape, merely as punishment for the official's trespass.

[5] It is true that the warrant was lost, and that there was some question whether it was returned. As to the first, we know of no case which imposes such a result upon the loss of the document, if all the formalities were observed; nor can we see why the proof should differ from that appropriate in the case of any other lost document. As to the second, we need only say that there was evidence of compliance with all the requirements of the statute. What the learned judge found to have been the fact we have no means of knowing. We say this without meaning to imply that the failure to return the warrant, or to make the prescribed return upon it, is a prerequisite to the competency of the evidence secured. Rose v. United States (C. C. A.) 274 F. 245, 250. How far Murby v. United States, 293 F. 849 (C. C. A. 1), has been overruled by Gandreau v. United States, 300 F. 21 (C. C. A. 1), it is not necessary to inquire. There is no reason to suppose that the warrant did not include the basement. The affidavit called for such a warrant, and it is to be presumed that all was properly done in form of law.

The last and most important point arises from the fact that Sassi's affidavit was made after entry upon the defendant's premises, and that upon the facts therein alleged the subsequent search depended. The defendants argue, as we understand it, that if this entry was unlawful the information gained by means of it was unlawfully used in the affidavit; therefore the warrant was unlawful; and, finally, the liquors seized under it were incompetent as evidence. At the outset we note that, except for tasting the alcohol, Sassi could have learned, and perhaps did learn, all that he put in the affidavit, while he stood outside. As the affidavit would have equally supported the warrant, without the allegation that he tasted the alcohol, the question arises whether it makes any difference even if his entry was unlawful. He gained by it no more than was available to him before entry. It is therefore at best extremely doubtful whether he can be said to be profiting by his unlawful entry, in the sense that the rule requires in order to make the evidence incompetent. That point we only raise, lest it be thought we imply the opposite.

[6] In any event, we think that the entry and the arrest were lawful. It is true that the similar arrest in Agnello v. United States, supra, was of persons engaged in committing a felony, about which at common law there never was any question. But that point was not raised, and it is doubtful if the Supreme Court attached any importance to the circumstance. While a peace officer might at common law arrest without warrant for a misdemeanor committed in his presence,

which was a breach of the peace, his power to do so in other cases is at best most uncertain. Generally it has been held not to exist. Com. v. Wright, 33 N. E. 82, 158 Mass. 149, 158, 19 L. R. A. 206, 35 Am. St. Rep. 475; Pinkerton v. Verberg, 44 N. W. 579, 78 Mich. 573, 584, 7 L. R. A. 507, 18 Am. St. Rep. 473; Delafoile v. State, 24 A. 557, 54 N. J. Law, 381, 16 L. R. A. 500; McLannon v. Richardson, 15 Gray (Mass.) 74, 77 Am. Dec. 353; Butolph v. Blust, 5 Lans. (N. Y.) 84; Hennessy v. Connolly, 13 Hun, 173; Agnello v. United States, 290 F. 671, 679 (C. C. A. 2); McBride v. United States, 284 F. 416 (C. C. A. 5); Wharton, Crim. Law (10th Ed.) § 34; Bishop, New Crim. Proc. §§ 169, 183(1), 183(5). For nearly 50 years in New York the power has extended to all crimes (Code Cr. Proc. § 177), even to the point of breaking (section 178); but, as the National Prohibition Act has not incorporated the state procedure in this respect (as R. S. § 788 [Comp. St. § 1312], has in the case of marshals and their deputies), the New York law does not help to a solution here.

That the Commissioner's appointees under section 38, tit. 2, National Prohibition Act (Comp. St. Ann. Supp. 1923, § 10138½y), are "officers" clearly appears from the frequent use of that term; e. g., sections 25, 26, 28, tit. 2 (Comp. St. Ann. Supp. 1923, §§ 10138½m, 10138½mm, 10138½o), in a context which includes them. Their powers are nowhere inclusively defined, and the question really is whether these are to be confined to the express instances mentioned or are to be given a more general scope. By section 2, tit. 2 (Comp. St. Ann. Supp. 1923, § 10138½a) they are given power to "swear out warrants"; but, standing alone, that would not be enough. By section 25 they are empowered to execute search warrants; at least, such is the more general holding. Keehn v. United States, 300 F. 493 (C. C. A. 1). By section 26 they are directed to seize all vehicles, on land or water, which they "discover" to be carrying liquor, and to arrest the person in charge, and this they may do without warrant, Carroll v. United States, 45 S. Ct. 280, 267 U. S.

132, 69 L. Ed. 543, 39 A. L. R. 790; Daisen v. United States, 4 F.(2d) 382 (C. C. A. 6); Elrod v. Moss, 278 F. 123 (C. C. A. 4). We do not understand that the power to arrest in such cases is merely an incident of the search, and dependent upon it. Carroll v. U. S., supra, pages 138–158. Nor is it reasonable to suppose that the power depends upon the person's being in charge of a vehicle; that is, that a man carrying liquor in a valise is exempt from arrest, though another driving a cart is not. Again, we can find no rational ground for drawing any line between transporting and manufacturing, one being as serious an infraction of the law as the other.

[7] So it seems to us that the power must exist when manufacturing takes place in the presence of a prohibition agent. We do not read Snyder v. United States, 285 F. 1 (C. C. A. 4), in a contrary sense, but as turning upon whether the officer had actually seen the crime committed. While it must be agreed that this interpretation extends the act beyond its exact terms, we think this allowable under section 3, tit. 2, National Prohibition Act (Comp. St. Ann. Supp. 1923, § 10138½aa), which requires us to give it a liberal construction. By that we understand that we are not to read it so as to leave its incidence whimsical and arbitrary.

If the arrest would have been lawful on neutral ground, it did not become unlawful because the agents had to enter. The cases sometimes draw a line at breaking; but, when the door is open, so far as we know, they do not. McBride v. United States, supra; Ford v. Breen, 53 N. E. 136, 173 Mass. 52; Com. v. Tobin, 108 Mass. 426, 11 Am. Rep. 375; State v. Mills, 69 A. 841, 22 Del. (6 Pennewill) 497; Adair v. Williams, 210 P. 853, 24 Ariz. 422, 26 A. L. R. 278; People v. Woodward, 190 N. W. 721, 220 Mich. 511; United States v. Borkowski (D. C.) 268 F. 408. In all these cases the premises entered were not of a public kind, as in Dillon v. United States, 279 F. 639 (C. C. A. 2), and Vachina v. United States, 283 F. 35 (C. C. A. 9).

Judgment affirmed upon first count; reversed upon second count.