PEOPLE v WARNER

1. SEARCHES AND SEIZURES—STATUTES—EAVESDROPPING—STATE STAT-
   UTES—FEDERAL STATUTES—PREEMPTION.

   A Federal eavesdropping statute does not preempt a Michigan
   eavesdropping statute where the Michigan statute is more
   stringent than the Federal statute which contains an aggrieved
   person limitation, and where the Michigan statute does not
   produce a result inconsistent with the objective of the Federal
   statute; both statutes may apply (18 USC 2510 *et seq.;* MCLA
   750.539 *et seq.).*

2. SEARCHES AND SEIZURES—EAVESDROPPING—PROBABLE CAUSE—STAT-
   UTES.

   It was proper for a police officer to legally use a statement made
   over the telephone concerning the possession of narcotics to
   establish probable cause for a further investigation where the
   motel telephone operator overheard the statement accidentally,
   and the record shows that at the time the police officer learned
   of the statement there was nothing to indicate that the officer
   knew or should have known that the statement was overheard
   in violation of the eavesdropping statute (MCLA 750.539[c], [e]).

3. SEARCHES AND SEIZURES—EVIDENCE—ARREST—PROBABLE CAUSE—
   PLAIN VIEW.

   Evidence was improperly suppressed and the information improp-
   erly quashed on a charge of possession and use of heroin where
   the record shows there was sufficient probable cause from an
   overheard telephone call to a motel room concerning the pos-
   session of narcotics for the police to proceed to the motel room
   for further investigation, what was heard and observed by the
   police outside the room established sufficient probable cause to
   enter the room, and once in the room plain view observations
   established the probable cause to arrest the defendant and to
   seize the suppressed evidence.

REFERENCES FOR POINTS IN HEADNOTES
[1, 2] 68 Am Jur 2d, Searches and Seizures § 61.
[3, 4] 63 Am Jur 2d, Searches and Seizures § 69.

4. SEARCHES AND SEIZURES—EAVESDROPPING—PRIVATE MONITORING—
   POLICE.

Police actions in reliance on information obtained by a private
individual monitoring a telephone conversation between third
parties were not illegal, even though the record later estab-
lished that the private individual illegally monitored the con-
versation, where the private individual had no connection with
the police and the monitoring in question was not authorized
by any police agency.

Appeal from Ingham, Donald L. Reisig, J. Sub-
mitted October 7, 1975, at Lansing. (Docket No.
21127.) Decided October 27, 1975. Leave to appeal
granted, 396 Mich 842.

Dale Warner was charged with possession and
use of heroin. Motions to suppress evidence and to
quash the information granted. The people appeal.
Reversed and remanded.

*Frank J. Kelley,* Attorney General, *Robert A.
Derengoski,* Solicitor General, *Raymond L. Scodel-
ler,* Prosecuting Attorney, *Thomas Rasmusson,*
Special Assistant Prosecuting Attorney, and *Rich-
ard W. May,* Assistant Prosecuting Attorney, for
the people.

*Roger L. Wotila,* Assistant State Appellate De-
fender, for defendant.

Amicus Curiae: Prosecuting Attorneys Appellate
Service, by *Edward R. Wilson,* Director.

Before: QUINN, P. J., and D. E. HOLBROOK and
D. F. WALSH, JJ.

QUINN, P. J. August 15, 1973 defendant was
charged with possession and use of heroin contrary
to MCLA 335.341(4)(a); MSA 18.1070(41)(4)(a) and
MCLA 335.341(5)(a); MSA 18.1070(5)(a). Prelimi-

nary examination was held November 8 and 28, 1973 and January 28 and 29, 1974. Defendant was bound over for trial as charged. The information charged defendant with possession of heroin and attempted use thereof.

Defendant filed motions to suppress evidence, to quash the information and for discovery. The trial court ordered discovery and denied the motions to suppress and to quash. Defendant filed a motion for rehearing on the basis of newly discovered evidence. This motion was granted; further evidence was taken and the motions to suppress and to quash were granted. The people appeal.

Nancy Witherspoon was a registered guest at Motel 6 in Lansing. She occupied room 235. Shortly before noon on August 15, 1973, an outside telephone call for a Miss Witherspoon was received at Motel 6. The clerk on duty, Louise Auslander, handled telephone calls to and from the guest rooms. She connected the outside caller, who had a male voice, with room 235, and was then interrupted by some other event. When her attention returned to the telephone switchboard, she noted that the line to room 235 was still open and picked up the receiver to ascertain whether the call had been completed. She heard a female voice say, "I've got drugs". Thereafter, Mrs. Auslander continued to listen to the conversation.

Mrs. Auslander notified the Lansing police of possible drug traffic at Motel 6. Sergeant Baylis of the Lansing Police Department was in charge of the metro-narcotics squad. At about 11:50 a.m., on August 15, 1973, he was returning from lunch when he received a radio message from his secretary to proceed to Motel 6. Prior to doing so, Sergeant Baylis telephoned his office and was advised that Nancy Witherspoon was involved in the

activities at Motel 6. She was known to Baylis as a person involved in drug traffic in the Lansing area.

Sergeant Baylis proceeded to Motel 6 where he talked with Mrs. Auslander and learned what Mrs. Auslander had overheard of the telephone conversation between Nancy Witherspoon in room 235 and the male person who had called her. Sergeant Baylis then telephoned the office of the prosecuting attorney, related what he had learned from Mrs. Auslander and requested instructions. Whatever was to occur at room 235 was supposed to occur within about five minutes of this telephone call. Within that time limitation, there was no possibility of obtaining a search warrant, and Sergeant Baylis was advised by the prosecuting attorney's office to proceed to enter the room and confiscate the drugs.

The manager of the motel permitted Sergeant Baylis and three other officers to occupy room 231. Through the partially opened door of room 231, Sergeant Baylis saw a male person stop at room 235. The person rapped and was admitted. The police stationed themselves near the door of room 235 and they overheard conversation emanating therefrom concerning "bags" or "bindles", the price of a "quarter" and the effect of a "hit". Water was heard running and they smelled something that smelled like something burning. These observations indicated to Sergeant Baylis that something related to drug traffic was going on in the room and he decided to enter.

Sergeant Baylis inserted a passkey in the door of room 235 but before he turned it, he heard a female voice within say she had to go downstairs. Thereupon Sergeant Baylis stepped away from the door without turning the key and the door partially opened. It was immediately closed again and

an officer said "Police, open up" and he kicked the door. Shortly, a voice within said "I'll open the door". It was opened and the officers entered.

Inside, Officer Cross saw the bathroom door open partially and he saw a male person (later identified as defendant) peek out. Officer Cross approached the bathroom door; it closed and he forced it open. He observed defendant standing in front of the sink holding a syringe, a bottle cap and some tinfoil in his right hand. Defendant threw these articles toward the toilet and the syringe went into the toilet, but the bottle cap and tinfoil fell on the floor. Officer Cross retrieved all of the articles, and later the syringe proved to contain heroin. In plain view on a table, there was a small wooden box with the lid open. In it were visible small tinfoil packets which later proved to contain heroin.

At the preliminary examination, defendant contested the admission in evidence of Mrs. Auslander's recitation of what she overheard of the telephone conversation between Nancy Witherspoon and the male caller and the subsequent use of that information by Sergeant Baylis. It was and is defendant's position that by monitoring that call Mrs. Auslander violated the Federal and state eavesdropping statutes, 18 USC 2510 *et seq.,* MCLA 750.539 *et seq.;* MSA 28.807 *et seq.* Thus, defendant argues, the illegally obtained information was inadmissible, and under the "fruit of the poisonous tree" doctrine, Sergeant Baylis could not legally use that information. If this evidence and the use thereof by Sergeant Baylis was barred, defendant contended there was no probable cause for the police to enter room 235, arrest defendant and seize the evidence in question.

The district judge held that defendant was not

an "aggrieved person", as defined in 18 USC
2510(11), and that under the limitation found in 18
USC 2518(10)(a) defendant had no standing to
raise the issue. The district judge further held that
Mrs. Auslander overheard "I've got drugs" acci-
dentally and that MCLA 750.539e; MSA 28.807(5)
did not bar the admission of that portion of the
telephone conversation overheard by Mrs. Auslan-
der. The balance of what Mrs. Auslander over-
heard was barred by the district judge under the
state statute last referred to. The district judge
found probable cause for the officers to enter room
235 and to arrest defendant and to seize the evi-
dence in question which was received in evidence.

At the conclusion of the first hearing on the
motions to suppress and to quash, the trial judge
affirmed the district judge on the issue of defend-
ant not being an "aggrieved person" under the
Federal statute. Although expressing some doubts
that Mrs. Auslander overheard any of the tele-
phone conversation accidentally, the trial judge
affirmed the district judge on the finding that "I've
got drugs" was overheard accidentally. This affirm-
ance was based on the district judge's opportunity
to see and hear the witness. For the foregoing
reasons, the trial judge denied the motions to
suppress and to quash.

At the first session on rehearing, two former
employees of Motel 6 testified that Mrs. Auslander
had admitted to them that she had on occasion
deliberately listened to telephone conversations
between guests and outside callers. At the second
session held June 13, 1974, the prosecuting attor-
ney conceded that Mrs. Auslander had deliberately
monitored the outside call to Nancy Witherspoon
for reasons which Mrs. Auslander and the prose-
cuting attorney believed to be legitimate. The

information which led to this concession was learned by the prosecutor that day. On the strength of this concession, the trial judge held that the evidence obtained from the monitored telephone conversation was illegally obtained and it was inadmissible. Without that evidence there was no probable cause to enter room 235 and to arrest defendant and to seize the evidence in question. The motions to suppress that evidence and to quash the information were granted.

In an exhaustive brief the people have raised five issues which contain 14 sub-issues. In an equally exhaustive brief, defendant has responded thereto. We have considered all the issues raised but we decline to write to some of them because whatever we said would be *dicta*. This is true because our analysis of the case convinces us that two issues are determinative of this appeal.

Before reaching those issues, however, something must be said regarding the people's contention that the Federal eavesdropping statute has preempted the field, thus causing the state statute to be ineffective. We find this contention untenable. The state statute is more stringent than the Federal statute since it contains no "aggrieved person" limitation. The state statute does not produce a result inconsistent with the objective of the Federal statute, *Burbank v Lockheed Air Terminal, Inc.,* 411 US 624; 93 S Ct 1854; 36 L Ed 2d 547 (1973). We find both statutes applicable.

MCLA 750.539c; MSA 28.807(3) provides:

"Any person who is present or who is not present during a private conversation and who willfully uses any device to eavesdrop upon the conversation without the consent of all parties thereto, or who knowingly aids, employs or procures another person to do the

same in violation of this section, is guilty of a felony".

MCLA 750.539e; MSA 28.807(5) provides:

"Any person who uses or divulges any information which he knows or reasonably should know was obtained in violation of sections 539b, 539c or 539d is guilty of a felony".

The language "knows or reasonably should know was obtained in violation" of the last quoted section is pertinent to decision of whether the overheard statement "I've got drugs" was legally usable by Sergeant Baylis. The legality of this use depends on whether Sergeant Baylis knew or reasonably should have known that the statement was obtained by Mrs. Auslander in violation of MCLA 750.539c, *supra.* The resolution of this inquiry depends on what Sergeant Baylis knew or reasonably should have known about the way Mrs. Auslander overheard "I've got drugs". This question must be judged from what the record discloses as of August 15, 1973, not June 13, 1974. We find nothing in the record to indicate that Sergeant Baylis knew on August 15, 1973 that Mrs. Auslander overheard that statement in violation of MCLA 750.539c. The record fails to disclose that Sergeant Baylis reasonably should have known on August 15, 1973 any more concerning the manner in which Mrs. Auslander overheard this statement than was disclosed at the preliminary examination. On the basis of the evidence produced at the preliminary examination, the district judge found that Mrs. Auslander overheard "I've got drugs" accidentally. This finding was affirmed by the trial judge, and we are unable to say that this finding was clearly erroneous, GCR 1963, 517.1. We con-

clude that Sergeant Baylis could legally use the statement "I've got drugs".

The result of this conclusion is that the record established probable cause for Sergeant Baylis to proceed to room 235 for further investigation. What was heard and observed outside room 235 established probable cause to enter the room. Once in the room, plain view observations established the probable cause to arrest and to seize the evidence suppressed by the trial judge.

Mrs. Auslander was a private individual; she had no connection with the police, nor was her monitoring of the telephone conversation in question authorized by any police agency. By June 13, 1974, the record establishes that she illegally monitored that telephone conversation, but that illegality does not carry over to the police and infect their actions. *People v Harry James Smith* and authorities therein cited, 31 Mich App 366; 188 NW2d 16 (1971).

Reversed and remanded.