PEOPLE v WASHINGTON

SEARCHES AND SEIZURES—PLAIN VIEW DOCTRINE—SEARCH WITHOUT
WARRANT—DRUGS AND NARCOTICS—PROBABLE CAUSE.

A police officer who entered the hallway of an apartment building
in response to a call for assistance by an emergency medical
unit had a legal right to be in the hall, and the viewing of
drugs and drug paraphernalia in plain view through the open
doorway of the apartment to which the emergency unit had
been called supplied the probable cause needed to justify the
entry and search of the apartment.

Appeal from Recorder's Court of Detroit, George
W. Crockett, Jr., J. Submitted June 20, 1977, at
Detroit. (Docket No. 29538.) Decided August 23,
1977.

Henry J. Washington was charged with posses-
sion of heroin with intent to deliver. The trial
court granted the defendant's motion to suppress
evidence and ordered the information quashed.
The people appeal by leave granted. Reversed and
remanded.

*Frank J. Kelley,* Attorney General, *Robert A.
Derengoski,* Solicitor General, *William L. Cahalan,*
Prosecuting Attorney, *Edward R. Wilson,* Re-
search, Training & Appeals, and *Don W. Atkins,*
Assistant Prosecuting Attorney, for the people.

Before: BEASLEY, P. J., and V. J. BRENNAN and
J. R. MCDONALD,* JJ.

REFERENCES FOR POINTS IN HEADNOTE

68 Am Jur 2d, Searches and Seizures § 88.

Search and seizure: Observation of objects in "Plain view"—Su-
preme Court Cases. 29 L Ed 2d 1067.

* Circuit judge, sitting on the Court of Appeals by assignment.

V. J. BRENNAN, J. Defendant Henry Junior Washington was charged with possession of heroin with intent to deliver, contrary to MCLA 335.341(1)(a); MSA 18.1070(41)(1)(a). Defendant was brought before Judge George W. Crockett, Jr., in Recorder's Court for the City of Detroit. Two pretrial motions were made, and an evidentiary hearing was held on December 17th and December 19, 1975. The court denied the first motion to exclude certain statements of defendant as being involuntary. The court granted defendant's motion to quash certain evidence obtained from defendant's apartment, finding the entry by police violative of his Fourth Amendment rights. Judge Crockett dismissed the case on December 19, 1975. The order granting the motion to quash the information was entered on July 16, 1976, and filed on July 19, 1976. On June 23, 1976, plaintiff filed an application for delayed appeal, which was granted by order of this Court dated September 9, 1976.

Before addressing the issue presented by the people in this case, a review of the facts is necessary. The situation leading to defendant's arrest arose when Detroit police responded to a radio call on October 23, 1976, ordering them to meet an EMS (Emergency Medical Service) unit at 60 Winder Street, Apartment 114. The two officers, Edward Freigruber and his partner, found the apartment entrance locked. However, an apartment resident present at the time had a key and admitted them.

As the officers approached the apartment, they noticed the door open and saw EMS personnel administering emergency medical treatment to defendant. Defendant was standing by the sink on the opposite side of a one-room apartment. While still standing outside the apartment, Officer Freigruber observed two coin envelopes on a dresser.

His partner noticed other envelopes, all of which were ultimately seized by the two police officers. In total, forty-three coin envelopes of suspected heroin were taken.

Officer Freigruber testified at the suppression hearing that a woman who was not a resident of the apartment building was responsible for calling the EMS because she believed defendant was having a seizure. At the time the officers arrived, defendant appeared drowsy but was responsive to their questions. After being advised of his constitutional rights, he admitted some knowledge of the heroin discovered in the apartment.

James Foote, one of the EMS personnel who treated defendant, testified that he found defendant semi-conscious upon arriving at the apartment and administered a stimulant, white ammonia, which revived him. Witness Foote acknowledged that policy existed for requesting police assistance on such emergency runs:

"Q * * * Is it routine for the police to meet you?

"A Unconscious patients, assaults, where drugs are involved, any violence, yes. Or family disturbances.

"Q So it's not real uncommon then for police to go along with you, is that right?

"A Actually when possible they are to be there before we are."

At the conclusion of the hearing, the trial court denied the defense motion to exclude the statement regarding defendant's knowledge of the heroin in his apartment. However, as to the motion to quash, though the court found sufficient evidence to support the charge of possession of heroin with intent to deliver, the fact that he believed "both the police and the EMS are attempting to capitalize on emergency situations" led him to declare

the officers' entry and seizure of suspected heroin as an unconstitutional violation of defendant's Fourth Amendment rights. The trial court thus dismissed the case in the following language:

"THE COURT: It would seem to me, if this is a matter of policy, that both the police and the EMS are attempting to capitalize on emergency situations, where the owners of the premises have no choice but to call for help, and to deduce from that the necessary element of consent to justify the police in coming in. And I don't think that's the law."

On appeal, then, the people ask us to decide whether the trial court's finding that police officers who responded to a radio dispatch to meet an emergency medical service unit and who saw narcotics lying on a dresser in plain view within the room occupied by defendant did not have a right to be in that position and so to seize the suspected narcotics was clearly erroneous.

The trial court expressed its opinion that "both the police and the EMS are attempting to capitalize on emergency situations" when they claim that the necessary consent to enter a building can be inferred from the owner's call for emergency assistance. However, EMS employee Foote testified as to the reasons in these situations for requests to police for assistance. He stated that in situations involving unconscious patients, family disturbances, assaults, drugs or any violence, police are usually dispatched and are to arrive before an EMS team does. He further testified that police were called when the EMS teams felt the need for protection in the form of a police escort. A police escort is automatically requested where drugs or an assault are involved in the EMS call.

The people thus argue that the police were

justified in responding in the usual manner to the call for assistance they received from EMS, and thus their entry into the apartment building was neither illegal nor an invasion of privacy. From where the officers were standing in the common hall, through the open door, they could see in plain view what looked suspiciously like drugs and narcotics paraphernalia. They had a right to be in the hall; they could see the drugs in plain view; and, therefore, no "search" in Fourth Amendment terms occurred.

The officers had not only a right but a duty to enter the apartment building for the purpose of assisting the EMS team. See *People v Chapman,* 73 Mich App 547, 550–553; 252 NW2d 511 (1977), *People v Chimovitz,* 237 Mich 247, 250; 211 NW 650 (1927), *People v Woodward,* 220 Mich 511, 515–517; 190 NW 721 (1922). The officers had a legal right to be in the hall. The drugs and paraphernalia in plain view supplied the probable cause needed to justify entry and search of the apartment.

The facts of this case are somewhat reminiscent of the facts in *People v Warner,* 65 Mich App 267; 237 NW2d 284 (1975). In that case, police were called by a civilian employee of a motel who overheard a conversation indicating that drugs were present in room 235. Officers stationed themselves nearby and were able to hear and smell things which indicated that drugs were being used. They entered and arrested the occupants, including State Representative Dale Warner. The circuit judge ruled the entry and search illegal and dismissed the case.

This Court ruled that the information given the police by the motel employee established probable cause for the police to further investigate and,

upon hearing and observing drug related activity inside the room, to subsequently enter the room and seize the narcotics:

"The result of this conclusion is that the record established probable cause for Sergeant Baylis to proceed to room 235 for further investigation. What was heard and observed outside room 235 established probable cause to enter the room. Once in the room, plain view observations established the probable cause to arrest and to seize the evidence suppressed by the trial judge." *People v Warner, supra,* at 275.

In this case as well, the officers' response to the call by EMS for police assistance in a potentially dangerous situation placed the officers in a position where they had a right to be. Their presence outside the defendant's apartment room door was not unjustified. Witness Foote's testimony indicated clearly enough the basis for the EMS policy to contact police and provide for their protection in such situations. As a result, what the officers observed from the hallway, where they had been properly admitted by concerned apartment residents, established probable cause to enter the room and investigate the coin envelopes later found to contain heroin. The trial court erred in concluding that this entry constituted an unconstitutional invasion of privacy.

Reversed and remanded for trial.