HOLLAND v. CLERK OF GARDEN CITY.

1. MUNICIPAL CORPORATIONS—SEWAGE DISPOSAL PLANTS—CONSTITUTIONAL LAW.

A sewage disposal plant is a work which involves the public health and safety and a city has clear constitutional authority to establish and maintain it whether it is an internal improvement or a public utility or not (Const. 1908, art. 8, §§ 22–25).

2. CONSTITUTIONAL LAW—CONSTRUCTION OF CONSTITUTION.

In construing a Constitution, the court determines the intent of the framers of the Constitution and of the people adopting it.

3. MUNICIPAL CORPORATIONS—PUBLIC UTILITY—CONSTITUTIONAL LAW —SEWER SYSTEM—APPROVAL OF ELECTORS.

The term "public utility," as used in section of Constitution restricting the right of a city to purchase a public utility or grant a public utility franchise unless the matter shall have first been approved by a three-fifths majority of the electors voting thereon, is confined to such as are enumerated in a preceding section authorizing a city to acquire "public utili-

ties for supplying water, light, heat, power and transportation,'' hence it is unnecessary to have the approval of three-fifths of the electors to establish and operate a sewer system (Const. 1908, art. 8, §§ 22, 23, 25).

4. Same—Sewage System—Statutes—Self-Liquidating Revenue Bonds.

The construction of a sewage system is a project of public health and safety within the sphere of activity contemplated by statute authorizing the issuance of self-liquidating revenue bonds by a city without submitting the proposition for the approval of the borrower's voters (Act No. 94, Pub. Acts 1933, as last amended by Act No. 2, Pub. Acts 1939).

5. Same—Extension of Water Supply System—Approval of Electors.

A city council has authority under self-liquidating revenue bond act to make an extension of an already existing water supply system without a vote of the electors (Act No. 94, §§ 1, 33, Pub. Acts 1933, as last amended by Act No. 2, Pub. Acts 1939).

6. Costs—Public Question—Self-Liquidating Revenue Bonds.

No costs are allowed in mandamus proceeding to compel city clerk to execute water supply and sewage disposal system revenue bonds pursuant to an ordinance adopted under the provisions of self-liquidating revenue bond act, a public question being involved (Act No. 94, §§ 1, 33, Pub. Acts 1933, as last amended by Act No. 2, Pub. Acts 1939; Garden City Ordinance No. 46).

Mandamus by Robert C. Holland and others, mayor and council of the city of Garden City, to compel Carl Heavlin, clerk of the city of Garden City, to execute certain revenue bonds. Submitted September 10, 1941. (Calendar No. 41,747.) Writ granted November 18, 1941.

*Berry & Stevens* (*Claude H. Stevens*, of counsel), for plaintiffs.

*Tinkham & Snyder*, for defendant.

*Miller, Canfield, Paddock & Stone*, amici curiae.

SHARPE, C. J.   Plaintiffs are respectively the mayor and members of the council of the city of Garden City. They seek a writ of mandamus directing the defendant, clerk of the city of Garden City, to execute "Water Supply and Sewage Disposal System Revenue Bonds, Series A," aggregating the principal sum of $400,000 as directed by the provisions of Ordinance No. 46 of said city.

The facts in this case are not in dispute. The city of Garden City is successor to the village of Garden City which was reincorporated as a home rule city in 1933. On July 15, 1929, at a special election, the electors of the village of Garden City approved by a more than three-fifths majority vote a proposition for the bonding of the village for the construction and laying of certain water mains. Pursuant to this authorization by the electors, bonds were issued and water mains were constructed. Subsequently, additional water mains were laid from time to time. At the present time, approximately 85 per cent. of the city is serviced by existing water mains; and it is stipulated by counsel that there is no previously issued bond outstanding as a lien on the water supply system or its revenues. But there are no sewers within the city, except a trunk line sewer built by Wayne county. The sanitary sewage in the city is now taken care of by septic tanks.

On June 23, 1941, the council of the city adopted Ordinance No. 46 pursuant to the provisions of Act No. 94, Pub. Acts 1933, as amended by Act No. 66, Pub. Acts 1935, and Act No. 2, Pub. Acts 1939 (Comp. Laws Supp. 1940, § 2486-22 *et seq.,* Stat. Ann. and Stat. Ann. 1940 Cum. Supp. § 5.2731 *et seq.*), which provides in part:

"SECTION 1.   Any * * * city * * * authorized to purchase, acquire or construct * * * sewage disposal plants and systems, water supply and/or water supply systems.   *   *   *

"SEC. 33. This act shall be construed as authorizing the issuance of such bonds provided for herein without submitting the proposition for the approval of the same to the voters of the borrower."

The ordinance provides for the construction of between five and six miles of additional water mains, and between 17 and 18 miles of sewers in the city; and for the financing of the sewers and additional water mains by the issuance of $400,000 of revenue bonds to be payable solely from revenues derived from the operation of the combined water supply and sewage disposal system of the city, but which are not to be general obligations or indebtedness of the city.

The electors did not vote upon the sewer improvement contemplated in the ordinance nor upon the question of the issuance of the revenue bonds. Subsequent to the adoption of the ordinance, the city sold the bonds which, however, have not been executed or delivered. The defendant, city clerk, who is required to sign the bonds, has refused to do so until the question of the necessity of an electoral vote upon the question of acquiring said improvements under article 8, § 25, of the Michigan Constitution (1908) has been determined by the court.

The question in issue is whether the sewer improvement provided for in Ordinance No. 46 passed by the city council pursuant to the provisions of Act No. 94, Pub. Acts 1933, as amended, is a "public utility" within the meaning of that term as used in article 8, § 25, of the Constitution.

Article 8 of the Constitution provides as follows:

"SEC. 22. Any city or village may acquire, own, establish and maintain, either within or without its corporate limits, parks, boulevards, cemeteries, hospitals, almshouses and all works which involve the public health or safety.

"SEC. 23.   Subject to the provisions of this Constitution, any city or village may acquire, own and operate, either within or without its corporate limits, public utilities for supplying water, light, heat, power and transportation to the municipality and the inhabitants thereof.   *   *   *

"SEC. 24.   When a city or village is authorized to acquire or operate any public utility, it may issue mortgage bonds therefore beyond the general limit of bonded indebtedness prescribed by law: *Provided:*   *   *   *

"SEC. 25.   *   *   *   Nor shall any city or village acquire any public utility or grant any public utility franchise which is not subject to revocation at the will of the city or village, unless such proposition shall have first received the affirmative vote of three-fifths of the electors of such city or village voting thereon at a regular or special municipal election."

It is urged by defendant that the proposed sewer system is a public utility; and that the electors must first approve the acquiring of such sewers pursuant to section 25 of the Constitution before the bonds may be legally issued.

It is urged by plaintiffs that the words "any public utility" in the above section 25 refer only to the public utilities enumerated in the preceding section 23; that a vote of the electors is required only when a city desires to acquire "public utilities for supplying water, light, heat, power and transportation;" and that a vote of the electors is not required when a city desires to acquire sewers which are authorized under the above-mentioned section 22.

In the recent case of *Young* v. *City of Ann Arbor,* 267 Mich. 241, we had under consideration the constitutionality of Act No. 94, Pub. Acts 1933, and it was contended that a sewage disposal plant was a public utility and not included within the provisions of

article 8, § 23, and therefore the city had no power or authority to construct it. The court said (pp. 246, 248):

"It will be conceded that a sewage disposal plant is a work which involves the public health and safety and a city has express constitutional authority to establish and maintain such plant. * * *

"Whether a sewage disposal plant is or is not an internal improvement does not affect the validity of the statute in question, for the reason that the Constitution, by article 8, § 22, clearly authorizes the construction of a sewage disposal plant, whether it is an internal improvement or a public utility or not."

Upon examination of the record in this case, we find that the charter of the city of Ann Arbor adopted by a vote of the people contained a provision authorizing the common council to construct, equip, maintain and operate a sewage treatment plant. The question of whether such a plant is a public utility within the meaning of section 25 was not raised nor decided in that case.

It is a fundamental principle of constitutional construction that we determine the intent of the framers of the Constitution and of the people adopting it.

In *Pfeiffer* v. *Board of Education*, 118 Mich. 560, 564 (42 L. R. A. 536), we said:

"In determining this question, we should endeavor to place ourselves in the position of the framers of the Constitution, and ascertain what was meant at the time; for, if we are successful in doing this, we have solved the question of its meaning for all time. It could not mean one thing at the time of its adoption, and another thing today, when public sentiments have undergone a change. *McPherson* v. *Secretary of State*, 92 Mich. 377 (16 L. R. A. 475, 31 Am. St. Rep. 587). It is therefore essential that we determine the intent of this provision by reference to the state of the law or custom previously existing,

and by the contemporaneous construction, rather than attempt to test its meaning by the so-called advanced or liberal views obtaining among a large class of the community at the present day.''

When section 25 of article 8 of the Constitution was being considered in the constitutional convention no one seemed to raise the question of the meaning of the words ''any public utility,'' nor have we had occasion since that time to define the phrase. While there were debates in the constitutional convention when the above section was under consideration, yet no positive action was taken to define its meaning except in the address to the people of the State as provided in the act under which the convention convened. In this address it was stated:

''A liberal scheme of home rule for cities and villages has been incorporated. * * *

''The right conferred to establish certain essential institutions involving public health and safety and to acquire the public utilities named, is conceived to be in line with the general privileges of home rule and one placing within the hands of municipalities, under the restrictions named, certain powers for potential competition with such corporations as from the very nature of the service required of them are monopolies.'' 2 Const. Debates (1908), pp. 1415, 1432.

From an examination of the above sections of the Constitution, it will be found that section 23 provides that cities or villages may own and operate public utilities for supplying *water, light, heat, power* and *transportation.* Section 24 provides the manner whereby a city or village may finance the acquisition and operation of any of the public utilities mentioned in section 23, and section 25 provides the manner by which such public utilities or public utility franchises may be acquired, namely, by a vote of the electors.

It would seem from the rule stated in the *Pfeiffer Case, supra,* that the words "public utility" as used in section 25 referred only to the public utilities enumerated in section 23. The utilities mentioned in section 23 are definite and are mentioned as "public utilities," while in section 25 the restrictions placed upon a city or village relate only to "public utilities." In section 22 the public works mentioned therein are not referred to as public utilities, but rather as works which involve public health and safety. In our opinion the words "any public utility" as used in section 25 refer only to public utilities enumerated in section 23. It follows that the construction and operation of the sewer system is not limited by the provisions of article 8, § 25, and it was not necessary to have the affirmative vote of three-fifths of the electors in order to establish and operate such a project.

The construction of the sewage system is a project of public health and safety and as such is within the sphere of activity contemplated by Act No. 94, Pub. Acts 1933, as amended.

The contemplated water system is an addition to an already existing system and under the authority of *Veldman* v. *City of Grand Rapids,* 275 Mich. 100, and *White* v. *Welsh,* 291 Mich. 636 (34 P. U. R. [N. S.] 401), the city council had the authority to make such an extension without a vote of the electors.

If necessary the writ of mandamus will issue compelling the city clerk to execute the bonds as authorized by Ordinance No. 46 of the ordinances of the city of Garden City. No costs will be allowed as a public question is involved.

Bushnell, Boyles, Chandler, North, Starr, Wiest, and Butzel, JJ., concurred.