## CITY OF MT. PLEASANT v. MICHIGAN CONSOLIDATED GAS COMPANY.

1. Gas—Rates—Condition Precedent to Each Change.

   Under provision of home-rule city's natural gas franchise ordinance providing for alteration of rates after initial three-year period "and at any time thereafter" with the mutual consent of the grantee and the city commission, and in event of disagreement and application by either party to the State public service commission, it was a condition precedent to each change of rates that a good-faith attempt be made by the parties to reach an agreement as to rates before application could be made therefor to the State commission as it was contemplated that an order fixing rates by such commission was to be subject to the statutory right of appeal (City of Mt. Pleasant Ordinance No 227, § 7).

2. Contracts—Construction by Parties.

   In construing indefinite or ambiguous provisions of contracts, the parties may be bound by their own interpretation.

3. Municipal Corporations—Public Utilities—Rates.

   A home-rule city has the power to fix reasonable rates as a condition to the use of its streets by a public utility (Const 1908, art 8, § 28).

---

REFERENCES FOR POINTS IN HEADNOTES

[1, 6, 9, 12] 43 Am Jur, Public Utilities and Services, §§ 194, 204.
[1, 6, 9, 12] Power of public service commission to increase franchise rates.    29 ALR 356, supplementing 3 ALR 730; 9 ALR 1165, and 28 ALR 587.
[2] 12 Am   Jur, Contracts, § 249.
[3–5] 43 Am Jur, Public Utilities and Services, § 87.
[5] 43 Am Jur, Public Utilities and Services, §§ 83, 86, 202.
[7] 50 Am Jur, Statutes, § 538.
[8] 43 Am Jur, Public Utilities and Services, §§ 10, 88, 89.
[10, 12] 43 Am Jur, Public Utilities and Services, § 197.
[12] 43 Am Jur, Public Utilities and Services, § 224.
[13] 14 Am Jur, Costs, §§ 91, 97.

4. Same—Public Utilities—Franchise—Contract—Rates.

The right of a home-rule city to contract with reference to rates depends upon its right to control of its streets and any contract made regarding rates is part of a franchise granted to a utility to use the streets (Const 1908, art 8, § 28).

5. Same—Public Utilities—Contracts—Power to Legislate.

The reserved constitutional power in a home-rule city to the control of its streets empowers it to contract, not to legislate, for public utility rates, the power to legislate with reference thereto being lodged with the State public service commission (Const 1908, art 8, § 28).

6. Public Service Commissions—Jurisdiction—Municipal Corporations—Regulation of Public Utilities.

The statute creating the State public service commission by vesting it "with complete power and jurisdiction to regulate all public utilities in the State except any municipally-owned utility and except as otherwise restricted by law" did not thereby repeal provision of previous statute restricting predecessor State public utilities commission from altering rates fixed by agreement between a municipality and a utility (CL 1948, §§ 460.6, 460.54).

7. Statutes—Implied Repeals Not Favored.

Repeals of statutes by implication are not favored.

8. Constitutional Law—Impairment of Contract Rights—Municipal Corporations—Public Utility—Rates.

The rights vested in parties to a contract or franchise fixing rates between a municipality and a public utility may not be impaired by a subsequently-enacted statute.

9. Gas—Rates—Ordinance—Public Service Commission—Injunction.

Proceeding before State public service commission to alter rates for supplying natural gas in home-rule city was properly enjoined where no good-faith attempt had been made by holder to franchise to negotiate rates with city commission as provided in ordinance pursuant to which franchise had been granted to holder's predecessor (City of Mt. Pleasant Ordinance No 227, § 7).

10. Same—Central Heating Plant—Industrial Users—Discontinuance of Service—Authority.

Provision of order of public utilities commission that consumers of natural gas for central heating plants and for industrial uses might be cut off in favor of consumers served under do-

mestic and commercial schedules was not valid under record failing to show that commission was asked to authorize grantee of franchise to discontinue service to such customers, franchise under which it was operating in home-rule city involved did not authorize such discontinuance and record shows sufficient natural gas available to supply needs of plaintiff city seeking injunction against such discontinuance of service (City of Mt. Pleasant Ordinance No 227).

11. Same—Home-Rule City—Other Municipalities—New Consumers.

Provision of home-rule city's natural gas franchise ordinance that grantee might extend its mains to other communities and supply them with natural gas did not relieve grantee of its obligation to supply gas in city granting the franchise, including new consumers of gas within the city (City of Mt. Pleasant Ordinance No 227, §§ 13, 18).

12. Same—Injunction—Public Service Commissions—Municipal Corporations—Artificial Gas—Costs.

Plaintiff, home-rule city which had granted a franchise for furnishing natural gas within its limits by an ordinance approved by the electors, would not be entitled to a declaratory decree, in the form of injunctive relief, circumscribing the right of the public service commission to function in accordance with the statute governing its procedure, since it may be assumed that, in the event the parties are unable to reach an agreement affecting rates and the gas company invokes action by the commission, proceedings before the commission will be conducted in accordance with the statutory procedure, and with due recognition of the contractual rights of the parties, hence, injunction to restrain defendant from including plaintiff with other municipalities in a proceeding to determine rates in a district, based on costs in the entire district and from considering cost of furnishing artificial gas is not permitted (CL 1948, § 460.1 *et seq.;* § .460.54; City of Mt. Pleasant Ordinance No 227).

13. Costs—Public Question—Failure of Either Party to Fully Prevail.

No costs are allowed in home-rule city's suit to enjoin gas company from proceeding to have rates for furnishing natural gas determined by the State public service commission, where question involved is a public one and neither party fully prevails.

Appeal from Isabella; Holbrook (Donald E.) J. Submitted June 21, 1949. (Docket No. 41, Calendar No. 44,454.) Decided September 8, 1949.

Bill by City of Mt. Pleasant and another against Michigan Consolidated Gas Company, a Michigan corporation, to restrain proceedings before Michigan Public Service Commission and for other relief. Decree for plaintiffs. Defendant appeals. Modified and affirmed.

*James E. Ryan* and *B. A. Wendrow*, for plaintiffs.

*Dyer, Angell, Meek & Batten* and *Clare J. Hall*, for defendant.

Carr, J. The defendant corporation is engaged in the business of selling and distributing gas in various communities of the State of Michigan. It is so operating in the city of Mt. Pleasant under a franchise granted on May 29, 1931, on which date the requisite majority of the electors of the city approved the action, to its predecessor, the Gas Corporation of Michigan. In April, 1942, the defendant acquired the properties and franchises of the Gas Corporation of Michigan, and has carried on the business since that time.

Claiming that defendant was violating certain provisions of the franchise which, by its terms, was granted for a 30-year period, plaintiffs brought suit in equity to obtain injunctive relief. Plaintiff Mac-Rae is a resident taxpayer and a user of gas within the city. The bill of complaint was filed March 22, 1948. Subsequent amendments broadened its scope to include matters not covered by the pleading in its original form. Plaintiffs alleged in their amended bill that defendant had instituted a proceeding before the Michigan public service commission to ob-

tain authority for the discontinuance of all rates for gas in effect in the city of Mt. Pleasant, and to substitute therefor greatly increased rates; that the specific provisions of the franchise did not allow the jurisdiction of the commission to be invoked unless and until good-faith attempts had been made to reach an agreement between defendant and plaintiff city with reference to the rates to be charged by defendant within the municipality, and had resulted in failure; that defendant had not made any effort to obtain such an agreement; that in the proceeding before the commission defendant sought to have the new schedules of rates determined on the basis of costs for the furnishing of natural gas, and also manufactured gas, to a number of Michigan communities which defendant sought to group in one district for rate-fixing purposes, in violation of the terms of the franchise; and that defendant was about to discontinue the furnishing of gas to certain central heating and industrial users within the city in disregard of its contractual obligation.

Plaintiffs sought both temporary and permanent relief enjoining defendant from proceeding with its petition to the public service commission until it had in good faith attempted to reach an agreement, based on the cost of furnishing natural gas, as to rates to be charged within the city of Mt. Pleasant. The bill of complaint also asked that defendant be restrained from including the city of Mt. Pleasant in any district with other communities served by it, and from seeking to have rates determined by the Michigan public service commission on the basis of furnishing gas to all communities within any such district, as contemplated by defendant; and also from discontinuing service to central heating and industrial users within the city in accordance with its threatened action.

Defendant answered the allegations of the bill of complaint, and the amendments thereto, asserting in effect that the franchise under which it was operating in plaintiff city did not preclude it from invoking the jurisdiction of the public service commission for the purpose of obtaining an order fixing rates for gas within the city without prior attempts to adjust such rates by agreement; that the proper conduct of its business necessitated the grouping of the city with other communities in a district within which rates should be determined on the basis of the cost of both natural and manufactured gas sold and distributed in such district; and that by virtue of a prior order of the commission it was authorized to discontinue the furnishing of gas to the central heating and industrial users thereof referred to in the bill of complaint. The answer further denied plaintiffs' right to injunctive relief. Defendant also moved to dismiss the bill of complaint, which motion was denied.

A temporary injunction was granted by the trial court in accordance with the prayer of the bill of complaint. Following a hearing on the merits, a decree was entered embodying the principal relief sought by the plaintiffs and restraining the defendant from indulging in the conduct of which plaintiffs complained. From such decree defendant has appealed.

Plaintiff city was organized, in 1921, under the home-rule act of the State, PA 1909, No 279, as amended.* No claim is made that it did not have power to grant the franchise to defendant's predecessor. The parties are not in accord, however, as to the interpretation of certain provisions of the franchise, particularly with reference to the matter of rates and the effect thereon of certain acts of the parties subsequent to its granting. Section 6 of the

* CL 1929, § 2228 *et seq.*, CL 1948, § 117.1 *et seq.* (Stat Ann § 5.2071 *et seq.*).

franchise specified the rates to be charged for gas to be used for domestic purposes. Section 7, which is directly involved in the present controversy, reads as follows:

"SEC. 7. Alteration of Rates. The rates specified in this franchise shall remain in force throughout the term of this franchise, subject to the following provisions: At the end of three years and at any time thereafter from and after the date of this franchise, said rates with the mutual consent of said grantee, successors and assigns, and the city commission of the city of Mount Pleasant, Michigan, or its successors, may be reviewed, altered and changed.

"In the event that said grantee, its successors and assigns, and the city commission of Mount Pleasant, Michigan, or its successors cannot agree to an altered or changed rate, then either party, namely said grantee, its successors or assigns or the city of Mount Pleasant, Michigan, acting by its duly authorized representatives, may apply to the Michigan public utilities commission (to whom jurisdiction to fix and alter gas rates in said city is hereby granted and conferred) to fix and establish rates in which case the rates so fixed, if just and reasonable, shall prevail."

Other sections of the franchise material to the issues here are set forth in the margin.*

---

* ORDINANCE No. 227 CITY OF MT. PLEASANT MAY 29, 1931

"SEC. 10. Provision in regard to artificial gas. Said grantee, its successors and assigns shall bring or shall cause to be brought natural gas to the corporate limits of said city, and on or before September 1, 1931, shall be furnishing natural gas to the inhabitants of said city in substantial compliance with the terms and provisions of this ordinance. Time is deemed to be the essence of this grant and the failure of said grantee, its successors and assigns, to procure and distribute natural gas to the inhabitants of said city within the time above stated, shall at the option of said city commission, work a forfeiture of this entire franchise. Should natural gas be procured and distributed in said city within the time above stated, and at some future date, due to the exhaustion or depletion of the supply of natural gas, said grantee, its successors or assigns, are unable to procure and distribute same and are able to convince said city commission or its successors that such failure is not due to the neglect or default of said grantee, its successors or assigns, then said grantee,

In 1934, after the expiration of the initial 3-year period of the franchise, negotiations were had between the parties, at the instance of the city, for the

its successors or assigns, at the option of said city commission or its successors, may be allowed to change over and substitute artificial gas, or a mixture of artificial and natural gas, and furnish same to the inhabitants of said city. Should such change and substitution be allowed by said city commission or its successors, then the rates to be charged the inhabitants of said city for such artificial gas or mixture, shall be fixed and established by the mutual agreement of said city commission or its successors and said grantee, its successors or assigns. If said parties cannot agree on a just and reasonable rate, and said franchise has not been declared forfeited by said city commission or its successors, then either party, namely said grantee, its successors or assigns, or said city of Mount Pleasant, Michigan, acting by its duly authorized representatives, may apply to the Michigan public utilities commission (to whom jurisdiction to fix and alter gas rates in said city is hereby granted and conferred), to fix and establish rates for said artificial gas or mixture of artificial and natural gas, in which case the rates so fixed, if just and reasonable, shall prevail.

"SEC. 11. Industrial rate. Grantee may charge for natural gas for industrial purposes, such rates as may be mutually agreed upon by the city of Mount Pleasant and said grantee.

"In the event of their inability to agree on such industrial rates, then said rates shall be such as may be fixed by the Michigan public utilities commission, upon the application of either party.

"SEC. 12. Franchise subject to control. The said grantee shall provide gas of the quality, heat units and pressure, and shall provide, inspect and install its meters for registering gas furnished hereunder, and shall otherwise transact its gas business in said city, subject to the rules and regulations of the Michigan public utilities commission or its successors, applicable to gas service therein. All the rights, powers and authority hereby granted and vested in said grantee, shall at all times remain subject to such reasonable regulation and control of the city commission of said city or its successors, as the same may from time to time be prescribed and adopted by ordinance or resolution of said city, except as to such matters as are regulated or provided for by this ordinance, or are herein submitted to the control and regulation of the Michigan public utilities commission, or its successors..

"SEC. 13. Ordinary standard to be maintained. Said grantee, its successors or assigns, may extend their pipe lines to other cities, communities or territory, and may sell gas to the same, but such sale shall in no wise affect the obligation of the grantee, its successors or assigns, to maintain and furnish sufficient pressure of gas for the use and benefit of the inhabitants of the said city of Mount Pleasant, Michigan.

"SEC. 14. Grantee to file acceptance. In consideration of the rights, authority and privileges herein granted, all of which shall vest in the grantee, its successors or assigns, for the period of 30 years as aforesaid, said grantee shall provide gas service in said city during the term of this franchise, and shall well and faithfully

adjustment of rates prescribed in section 6 of the franchise. The parties were unable to agree; and the city, acting in accordance with the provision of section 7, above quoted, petitioned the public utilities commission of the State for an order fixing and determining rates. The commission acted on the petition, and, under date of March 11, 1935, made an order with reference to the matter. In January, 1936, the Gas Corporation of Michigan filed a petition with the commission requesting a revision of existing rates, and also new schedules covering rates for certain central heating and industrial users. It is the claim of the plaintiffs that this action was taken after negotiations between the parties had resulted in failure to reach an agreement. The finding of the trial judge, as appears from his opinion, was in accord with plaintiffs' claim. Action on such petition was duly taken, and an order was made fixing the rates in question. In 1942, the Gas Corporation of Michigan presented another petition to the Michigan public service commission, successor to the public utilities commission, apparently under like circumstances, but the petition was withdrawn before final action was taken on it.

---

perform all things required of it herein, and such performance by the grantee, its successors or assigns, shall be in lieu of all license fees and charges, of every kind and nature except lawful taxes upon its property, which the city might otherwise levy or impose."

"SEC. 18. Extension of mains. Grantee, its successors and assigns, agrees to extend its lines and mains to serve new consumers of gas in said city as provided for in the present charter of said city. The grantee, its successors or assigns agrees to install services from the main to the curb line, free of charge to the consumer.

"SEC. 19. Franchise subject to charter. This franchise is hereby granted by said city, and is hereby accepted by said grantee, its successors and assigns, with the express understanding and agreement that all terms, conditions and requirements of chapter 8 of the revised charter of Mount Pleasant, Michigan, adopted by the electors of said city on March 7, 1921, and amendments thereto, apply to this franchise with the same force and effect as though said chapter 8 and amendments thereto, were specifically set forth and incorporated in this grant."

Defendant contends that when the jurisdiction of the State commission was invoked and exercised, the provision of the franchise with reference to fixing rates by agreement was abrogated, and that power to alter such rates was thenceforth vested absolutely in the commission. Plaintiffs contend that the language of the franchise is not in accord with defendant's claim, and that section 7, above quoted, must be construed as requiring good-faith attempts to reach an agreement between the city and the utility before application may be made to the commission to alter rates previously established, whether by agreement of the parties, or by action of the commission. It is claimed in substance that the right to invoke the jurisdiction of the commission rests on the franchise, and that such right must be exercised accordingly.

The trial judge agreed with plaintiffs' contention, and we think the holding was correct. Under the specific language of section 7, a change in rates after the expiration of the initial 3-year period "and at any time thereafter" was expressly authorized. It may be assumed that the parties had in mind in the framing and acceptance of the franchise that changes in the rate schedules would, from time to time, become necessary. From the language used it seems evident that the parties intended that in each instance of a desired alteration such action should be taken, if possible, with the mutual consent of the city and the utility. Recourse to the State commission was authorized only in the event of failure to reach an agreement. The parties did not provide that in the event of such failure jurisdiction thenceforth should be vested in the commission. Rather, the party desiring the change was given the right to apply to the commission "to fix and establish rates." It may be noted in passing that such recourse was, in terms, authorized only for the purpose specified. In acting

1949]  MT. PLEASANT v. CONSOLIDATED GAS CO.    511

on the petitions referred to, the commission followed
the provisions of the statute relating to its procedure.
The clause in the franchise specifying that the rates
so determined should be effective, if just and reason-
able, suggests that the parties considered that if
either felt aggrieved by the order of the commission
the statutory right of appeal would be available.

In support of their argument as to the interpreta-
tion of section 7 of the franchise, plaintiffs claim that
the parties by their conduct placed a practical con-
struction thereon, and in effect recognized that the
initial resort to the commission in 1934 did not nullify
the provision with reference to altering rates by
mutual agreement and the necessity of attempting
to agree before petitioning for action by the commis-
sion. Such claim is entitled to consideration. This
Court has repeatedly held that in construing con-
tracts, indefinite or ambiguous in their provisions,
the parties may properly be bound by their own in-
terpretation. *City of Big Rapids* v. *Michigan Con-
solidated Gas Company,* 324 Mich 358, 367 (79 PUR
NS 301), and cases there cited.

Defendant further contends that the authority of
the city, in granting the franchise to defendant's
predecessor in 1931, to contract with reference to
rates, was permissive only and subject to subsequent
action by the State. Reliance is placed on certain
language in the opinion of the Court in *City of
Traverse City* v. *Citizens' Telephone Co.,* 195 Mich
373. In that case the plaintiff city was incorporated
in 1895 by a local act of the State legislature. By
the terms of the charter the common council was
given power to regulate the use of public streets and
highways within the city, and to regulate, prohibit
or license the use of telegraph, telephone, electric-
light and power poles or wires, over or under the
streets. The Court held that whether the power to
contract with reference to rates was merely permis-

sive, or otherwise, was not material; and that, assuming it to be permissive only, it was valid as between the parties until State control was asserted and interposed against it. The charter of the city of Mt. Pleasant, however, is subject to different considerations. As noted above, it was adopted in 1921 under the home-rule cities act. Article 8, § 28, of the State Constitution (1908) provides:

"No person, partnership, association or corporation operating a public utility shall have the right to the use of the highways, streets, alleys or other public places of any city, village or township for wires, poles, pipes, tracks, or conduits, without the consent of the duly constituted authorities of such city, village or township; nor to transact a local business therein without first obtaining a franchise therefor from such city, village or township. The right of all cities, villages and townships to the reasonable control of their streets, alleys and public places is hereby reserved to such cities, villages and townships."

The above section was quoted by this Court in *City of Detroit* v. *Michigan Public Utilities Commission*, 288 Mich 267, 277 (29 PUR NS 203). In discussing the right of a municipality to contract under said section, as distinguished from its right to legislate with reference to rates, it was said:

"Under the above provision of the Constitution, the city has the power to fix reasonable rates as a condition to the use of its streets by a public utility. *City of Kalamazoo* v. *Kalamazoo Circuit Judge*, 200 Mich 146. In the foregoing case, the Court quoted from *City of Noblesville* v. *Noblesville Gas & Improvement Co.*, 157 Ind 162 (60 NE 1032), where the court stated that a city had the unquestionable right to grant to any person, firm or corporation a franchise to occupy its streets and alleys for conveyance of gas to customers; and further:

" 'That the want of power to legislatively fix a rate does not prevent the execution of a contract, is illustrated by the case of *City of Noblesville* v. *Noblesville Gas & Improvment Co., supra,* where it is said:

" ' "That the city had no power to regulate the rates of its licensee makes no difference. It had the power to contract. And the power to regulate as a governmental function, and the power to contract for the same end, are quite different things. One requires the consent only of the one body, the other the consent of two. In this instance the city acted in the exercise of its power to contract, and it is therefore entitled to the benefits of its bargain."

" 'In *City of St. Mary's* v. *Hope Gas Co.,* (71 W Va 76 [76 SE 841, 43 LRA NS 994]), it was held that the city might, in the control of the use of its streets, prescribe conditions including the fixing of rates for gas, and might contract therefor, even though it possessed no governmental power to fix rates.

" 'The distinction between fixing rates by contract and under governmental power was clearly recognized by the supreme court of the United States in the case of *City of Detroit* v. *Railway Co.,* 184 US 368 (22 S Ct 410, 46 L ed 592), where it was said:

" ' "It is plain that the legislature regarded the fixing of the rate of fare over these street railways as a subject for agreement between the parties and not as an exercise of a governmental function of a legislative character by the city authorities under a delegated power from the legislature." '

"In *Boerth* v. *Detroit City Gas Co.,* 152 Mich 654 (18 LRA NS 1197), plaintiffs contended that the city had no power to regulate gas rates either by contract or legislation. It was held, however, that while the city had *no legislative power* to contract or establish rates, it had the implied power to prescribe rates *by agreement,* as a condition to the use of its streets by the gas company, because of the control provided for by the Constitution.

"The right therefore of the city to contract with reference to rates depends upon its right to control of its streets; and any contract made regarding rates is part of a franchise granted to a utility to use the streets."

. In *City of Jackson* v. *Consumers Power Co.*, 312 Mich 437, 448, (62 PUR NS 48), the Court quoted with approval a syllabus in *City of Detroit* v. *Michigan Public Utilities Commission, supra,* as follows:

" 'The reserved constitutional power in a city to the control of its streets (Const 1908, art 8, § 28) empowers it to contract, not to legislate, for public utility rates; the power to legislate with reference thereto having been lodged by the legislature in the public utilities commission.' "

Counsel in the instant case cite *City of Dearborn* v. *Michigan Consolidated Gas Co.*, 297 Mich 388 (39 PUR NS 31), in support of their contention. There the 5-year period for which rates were fixed by the franchise, granted by the city to the defendant, had expired. It was held in consequence that there was no existing contract between the company and the city with reference to rates, and that jurisdiction to fix the same was vested in the State commission. *City of Niles* v. *Michigan Gas & Electric Co.*, 273 Mich 255, also cited by defendant, is distinguishable on the facts from the case at bar. There the plaintiff city was subject to the fourth-class cities act of the State (PA 1895, No 215, as amended\*), by which it was granted authority to contract from year to year, or for a period not exceeding 10 years, for supplying the inhabitants of the city with gas or electricity. The original franchise, on which the city relied, in terms established the rate for the life of the grant. This Court held that the franchise provision fixing

---

\* CL 1929, § 1796 *et seq.*, CL 1948, § 81.1 *et seq.* (Stat Ann § 5.1591 *et seq.*).

the rate did not extend beyond the statutory period and that "the common council of plaintiff city had authority thereafter to contract for a change of rates," the language quoted having reference to the express provisions of the fourth-class cities act.

PA 1919, No 419, § 4, as amended by PA 1931, No 138 (CL 1948, § 460.54 [Stat Ann § 22.4]) provides that:

"In no case shall the commission have power to change or alter the rates or charges fixed in, or regulated by, any franchise or agreement heretofore or hereafter granted or made by any city, village or township."

The purpose of such provision is obvious. The legislature undertook to make it clear that the public utilities commission created by the act of 1919 should not have authority to interfere with rates as fixed by agreement between a municipality and a utility. Counsel for defendant argue that such provision was repealed by PA 1939, No 3.* Reliance is placed on section 6 of said act (CL 1948, § 460.6 [Stat Ann 1947 Cum Supp § 22.13 (6)]) which reads in part as follows:

"The Michigan public service commission is hereby vested with complete power and jurisdiction to regulate all public utilities in the State except any municipality owned utility and except as otherwise restricted by law. It is hereby vested with power and jurisdiction to regulate all rates, fares, fees, charges, services, rules, conditions of service and all other matters pertaining to the formation, operation, or direction of such public utilities."

It will be noted that this language contains an express recognition of restrictions imposed by law. We cannot agree with the contention that the legislature intended to repeal the provision of the act of 1919,

* CL 1948, § 460.1 *et seq.* (Stat Ann § 22.13 [1] *et seq.*).

above quoted, specifically recognizing the binding force and effect of franchises granted by municipalities to utilities in which rates to be charged are fixed by agreement. Repeals by implication are not favored. Had it been the intention of the legislature to attempt, by the act of 1939, to abrogate rate provisions of franchises then in force and effect, we think such intent would have been made manifest in clear and unmistakable language. Moreover, as we understand defendant's argument, it is predicated, in part at least, on the theory that the authority of plaintiff city to contract in 1931 with reference to the rates to be charged by the utility was merely permissive in character and, hence, subject to abrogation by the State in the exercise of its inherent powers. For the reasons previously pointed out, however, we think the city had authority to enter into a binding contract of the nature and character here involved. The impairment of vested rights under such a contract was considered by this Court in *Michigan Public Service Company* v. *City of Cheboygan,* 324 Mich 309. See, also, *City of Lansing* v. *Michigan Power Co.,* 183 Mich 400.

Under the provisions of the franchise it was the duty of the defendant, before invoking action by the Michigan public service commission, to endeavor in good faith to reach an agreement with plaintiff city with reference to proposed alterations in the rate schedules. This it did not do. It appears from the record that after the present suit was instituted defendant's representatives held some conferences with officials of the city. Presumably this was done because of the allegations in plaintiffs' bill of complaint. Such belated action did not constitute a compliance with the requirements of the franchise. The trial court was right in so holding, and in granting injunctive relief against the maintenance of the pro-

ceeding instituted by defendant before the commission.

Were plaintiffs entitled to injunctive relief to prevent defendant from discontinuing service to certain central heating and industrial users of gas? Defendant insists that it is entitled to discontinue such service on the theory that it is expressly authorized so to do by virtue of an order of the Michigan public utilities commission, entered February 24, 1936. Said order contained schedules covering rates for gas furnished for domestic purposes, for central heating plants, and for industrial uses. Each of the last two schedules referred to contained the following clause:

"Consumers served under this schedule are subject to shutoff in favor of consumers served under domestic and commercial schedules at times when there may be insufficient gas to supply demands of all consumers."

The petition on which said order was based was filed with the commission on January 22, 1936, and sought approval of rates that defendant proposed to charge in the city of Mt. Pleasant, and, also, in the city of Clare and the village of Rosebush. Under the terms of the franchise granted by the plaintiff municipality, the only purpose for which the jurisdiction of the commission could properly be invoked was to obtain an order fixing rates on which the parties had been unable to agree. Why the clause quoted above was included in schedules "C" and "D" of the order is not explained. The record before us does not indicate that the commission was asked to grant authority to defendant to discontinue service to consumers of gas within the city of Mt. Pleasant, and clearly, for the reason indicated, such a request would have been unauthorized.

Under the terms of the franchise defendant was obligated to serve new consumers of gas in the city,

and, while it had the right under section 13 to extend its pipe lines to other communities and sell and distribute gas therein, it could not, without violating its contract, thereby destroy its ability to perform its undertaking with plaintiff city. In commenting on the situation, the trial court said in part:

"The court has heard considerable testimony concerning the reserves of natural gas in the areas supplying the Mt. Pleasant district, and the court believes that counsel for defendant admits that there is sufficient natural gas to supply the needs of the said city for a period of time, at least until the Michigan-Wisconsin pipe line is scheduled to be completed in April of 1950, however, in any event the court finds as a matter of fact that such is the condition. Further the court believes that the defendant sets forth that it intends to supply natural gas and is able to supply natural gas to the said city for all its needs and not to substitute manufactured gas or a mixture of natural and manufactured gas. The purpose of sections 10 and 13 is to secure to the city of Mt. Pleasant an even pressure of natural gas as long as the defendant company is able to furnish the same and permitting the defendant company to extend its lines and mains to service other communities, but only so long as it would in no way affect the maintenance of a sufficient pressure of gas for the use and benefit of the inhabitants of the city of Mt. Pleasant, Michigan, thus insuring to the said city of Mt. Pleasant not only the benefit of natural gas but also sufficient supply to meet the needs of its inhabitants."

The record in the case supports the finding of the trial court as to the availability of natural gas to supply the needs of consumers in the plaintiff city. The correctness of such finding does not appear to be directly challenged. Under the circumstances defendant is not entitled, in view of the obligations assumed by it in the acceptance of the franchise, to refuse to continue service to the consumers in question for

central heating and industrial uses. It is not in position to urge that the provision above quoted from schedules "C" and "D" of the order of the public utilities commission of February 24, 1936, authorized such action on its part. The trial court properly determined the issue in favor of the plaintiffs.

As before pointed out, the petition filed by defendant with the public service commission on March 5, 1948, requested authority to abandon all rates then in effect in certain communities served by it, including Mt. Pleasant, and to substitute therefor new uniform rates in a district embracing such communities. Obviously it was the position of the defendant that it should be permitted to base its schedules of rates in all of the communities referred to on costs of service throughout the entire district, rather than being required to treat each community separately. Plaintiffs urge that such course may not be followed, as to Mt. Pleasant, without violating the 1931 franchise. The trial court upheld such contention and enjoined the defendant, in any rate application that it might make to the commission in the future to fix rates applicable in the city of Mt. Pleasant during the life of the franchise, from including Mt. Pleasant in the contemplated district, and, also, from including costs of manufactured gas, or capital investment in artificial gas plants, as a basis for any increase in rates in said city.

Defendant contends that the decree should be modified in this respect, insisting that when and if the matter finally comes before the commission for determination, it should be entitled to ask that its rates within the plaintiff city be based on the cost of service throughout the district that it seeks to establish, including other communities as well as the city of Mt. Pleasant, and that necessary costs of producing artificial gas be considered. It is further claimed that the matter is primarily one for deter-

mination by the commission when its jurisdiction is invoked, and that the court should not undertake, by injunction, to direct, control, or limit the procedure of the commission in advance of action thereby. Defendant's position in this respect is, we think, well taken. It may be assumed that if the parties are unable to reach an agreement with reference to changes in the rates to be charged by defendant within the city of Mt. Pleasant, and in consequence defendant thereafter invokes action by the public service commission, the proceedings before that body will be conducted in accordance with the statutory procedure, and with due recognition of the contractual rights of the parties. Such assumption is in accord with the intent suggested by the language of the franchise. If either party feels aggrieved by the order made, and desires to question its lawfulness or reasonableness, the statutory remedy by way of appeal is available for that purpose. The court should not, by injunctive process, seek to direct and control the theory on which defendant presents its case to the commission, nor should it undertake by such method to circumscribe the right of the commission to function in accordance with the statute governing its procedure. The situation is not such as to justify the granting of a declaratory decree, in the form of injunctive relief, affecting the course of the proceeding before the administrative body.

The decree of the trial court, modified as above indicated, is affirmed, and a decree will enter in this Court accordingly. Because of the nature of the questions involved, and the fact that neither plaintiffs nor defendant have fully prevailed, no costs are allowed.

Sharpe, C. J., and Bushnell, Boyles, Reid, North, Dethmers, and Butzel, JJ., concurred.