MERIDIAN CHARTER TOWNSHIP v ROBERTS

Docket No. 55351. Submitted November 3, 1981, at Lansing.—Decided
    April 6, 1982.

Meridian Charter Township brought an action against Dave M.
    Roberts and others in the Ingham Circuit Court to enjoin
    defendants from continuing to offer for sale a cable television
    service to residents of a private apartment complex without a
    franchise and to order the refund of all money collected from
    the operation of the cable television service without a license.
    The court, Thomas L. Brown, J., granted summary judgment
    for defendants, holding that the ordinance requiring the fran-
    chise provided only criminal sanctions and the court was not
    empowered to grant equitable relief in such circumstances and
    noting that the township was without authority to require a
    cable television service operating exclusively within the bounds
    of a private apartment complex to be franchised under its cable
    communications ordinance. Plaintiff appealed. *Held:*

    1. A township may prohibit the operation of a public utility
    without first obtaining a franchise.

    2. A cable television system is a public utility for purposes of
    the franchise provision of the constitution.

    3. The circuit court had jurisdiction to provide equitable
    relief.

    Reversed.

1. TELECOMMUNICATIONS — PUBLIC UTILITIES — CONSTITUTIONAL LAW.
    A township may prohibit the operation of a public utility without
        first obtaining a franchise; a cable television system is such a
        public utility (Const 1963, art 7, § 29).

2. EQUITY — JURISDICTION — PUBLIC UTILITIES.
    The existence of a penal provision in a statute or an ordinance
        does not necessarily have the effect of ousting the chancery

REFERENCES FOR POINTS IN HEADNOTES
[1, 2] 74 Am Jur 2d, Telecommunications § 186.
    Validity and construction of municipal ordinances regulating com-
        munity antenna television service (CATV). 41 ALR3d 384.
[2] 20 Am Jur 2d, Courts §§ 149, 150.

court of jurisdiction where prosecution does not afford an adequate remedy; a circuit court may exercise equity jursidiction to enforce compliance with a public utility franchise ordinance.

*Foster, Swift, Collins & Coey, P.C.* (by *William K. Fahey),* for plaintiff.

*Kim Thomas Capello,* for defendants.

Before: BRONSON, P.J., and T. M. BURNS and J. T. CORDEN,* JJ.

T. M. BURNS, J. Plaintiff appeals as of right a lower court order granting summary judgment in favor of defendants. The basis of the trial judge's ruling, as evidenced by his comments from the bench at a December 3, 1980, proceeding, appears to be a finding by the judge that the plaintiff township was without authority to require a cable television service operating exclusively within the bounds of a private apartment complex to be franchised under its cable communications ordinance. At an October 29, 1980, proceeding, the trial judge held that the circuit court was without power to grant equitable relief to correct the violation of an ordinance that is punishable by a fine or other criminal penalty. It is not clear from the record of this later proceeding whether the trial judge abandoned his earlier rationale for granting defendants' motion.

In April, 1977, plaintiff adopted the Meridian Township cable communications ordinance. Soon afterward, the National Cable Corporation began providing persons in the township cable television service pursuant to a franchise agreement that it had executed with the plaintiff township board in

* Circuit judge, sitting on the Court of Appeals by assignment.

compliance with the cable communication ordinance.

In 1980, the defendants commenced the operation of a cable television service in a 400-unit apartment complex that they had built and managed. The service consists of an antenna, a system of conducting cables, amplifiers, converters and other equipment that defendants used to amplify and modify television broadcast signals for redistribution in the apartment complex. Residents of the apartment complex pay an installation charge as well as monthly subscription fees to defendants.

On May 27, 1980, plaintiff commenced suit in the circuit court seeking an injunction prohibiting defendants from offering cable television service without a franchise, enjoining defendants from maintaining a cable wire across a public right-of-way without a franchise, and ordering defendants to refund all money they had collected from residents in the township in connection with their operation of a cable television service without a franchise.

Defendants moved for accelerated judgment claiming that a court of equity was without power to restrain the violation of a municipal ordinance that provided for only criminal penalties. The trial judge agreed and granted defendants' motion, stating his reasons for doing so on the record at an October 29, 1980, proceeding. On December 2, 1980, the trial judge heard argument on defendants' motion for summary judgment. Following that hearing, the trial judge found that the plaintiff township was without authority to require defendants to obtain a franchise in accordance with its cable communications ordinance. Plaintiff now appeals.

Pursuant to § 115-3(b) of plaintiff Meridian

Township's code of ordinances, "cable communications service" is defined as:

"[T]he business, at whole or in part, of receiving directly or indirectly over the air, and amplifying or otherwise modifying signals transmitting programs broadcast by one (1) or more signals, sound signals, pictures, visual images, digital signals, telemetry, or any other type of closed circuit transmission by means of electrical or light impulses, whether or not directed to originating signals or receiving signals off the air, and redistributing such signals by wire, cable or other means to members for the public located in the Charter Township of Meridian who pay for such service."

Section 115-4(a) of the code of ordinances provides that:

"No person shall construct, install, maintain or operate a cable communications system in the Charter Township of Meridian nor shall any person provide a cable communications service or acquire ownership or control of a cable communications company in the Charter Township of Meridian without such person having first obtained a franchise therefor from the Charter Township of Meridian in the form of a franchise agreement between the Charter Township of Meridian and the franchisee, which franchise agreement shall include, at the minimum compliance with the specifications of this Chapter."

Plaintiff first argues that the trial judge erred in holding that it does not have the authority to regulate a cable television system that offers service only to the residents of a private apartment complex. We agree.

Defendants concede that the operation of their television system falls within the scope of the language used in plaintiff's cable communications ordinance. Defendants' system is not a mere device

for the enhancing of the effectiveness of television antennas. Rather, it is a true cable television service that offers its subscribers signals that are not available to persons without facilities to decode them. Indeed, defendants state in their brief on appeal that the cable service it provides is comparable to the service offered by National Cable Company, a company that holds a franchise to operate within the plaintiff township.

Under the authority granted it in Const 1963, art 7, § 29, a township may prohibit any person who operates a public utility from transacting any business within the township without first obtaining a franchise. It appears then that if a cable television system of the type operated by defendants is a "public utility" within the meaning of this constitutional provision that plaintiff's cable communications ordinance is valid and defendants may be prohibited from operating their system without a franchise.

In a perceptive opinion issued in 1974, the state attorney general found that local governmental units did have authority to grant cable television franchises despite the absence of specific legislation on the subject. OAG 1973-1974 No 4808, p 130 (April 25, 1974). The attorney general opined that cable television systems were public utilities within the meaning of the Michigan Constitution. Specifically, he relied on art 7, § 29 and interpreted the term "public utility" to include cable communication systems in light of Const 1963, art 7, § 34, which provides that sections of the 1963 Constitution as well as state statutes that set forth the powers and limitations of counties, townships, cities, and villages "shall be liberally construed in their favor. Powers granted to counties and townships by this constitution and by law shall include

those fairly implied and not prohibited by this constitution".

In *White v Ann Arbor,* 406 Mich 554; 281 NW2d 283 (1979), the Michigan Supreme Court held that a cable television system was not a public utility within the meaning of that term as used in Const 1963, art 7, § 25 which provides:

"No city or village shall acquire any public utility furnishing light, heat or power, or grant any public utility franchise which is not subject to revocation at the will of the city or village, unless the proposition shall first have been approved by three-fifths of the electors voting thereon. No city or village may sell any public utility unless the proposition shall first have been approved by a majority of the electors voting thereon or a greater number if the charter shall so provide."

In reaching this conclusion, the Supreme Court found to be especially persuasive the treatment given § 25 by the drafters of the constitution with regard to the Court's 1941 interpretation of Const 1908, art 8, § 25, the predecessor version of art 7, § 25. In that 1941 opinion, *Holland v Clerk of Garden City,* 299 Mich 465; 300 NW 777 (1941), the Court held that a sewage treatment system was not a public utility within the meaning of the provisions of Const 1908, art 8, § 25. The *White* Court found nothing to indicate that the drafters of the 1963 Constitution did not intend to incorporate a *Holland*-type definition of public utilities into art 7, § 25:

"There is nothing to indicate that the 1961 delegates attempted to expand the *Holland* construction or apply it broadly to include privately funded franchises providing services unrelated to light, heat or power. To the contrary, the drafters carefully considered the *Holland*

construction when drafting the new § 25 and reduced the enumerated utility subject to its requirements by inserting the phrase 'furnishing light, heat or power' after the phrase 'any public utility'." 406 Mich 554, 567.

The principal distinguishing factor between art 7, § 25, considered by the Supreme Court in *White,* and art 7, § 29 before us here, is that the latter constitutional provision contains no such limiting language. This distinction is somewhat emphasized by the *White* Court's analysis of the public policy factors supporting its decision, in which the Court recognizes the right of local units of government to grant franchises to cable television entrepreneurs:

"This limited definition of the term public utilities as it is used in § 25 is supported by considerations of public policy.

"The construction advanced by plaintiff might unduly hinder the municipalities' ability to attract and grant franchises. Making franchises revocable at the will of the city would substantially increase the risks for those contemplating making large private investments in such projects. In some cases, this risk would be so great as to deter or effectually prohibit entrepreneurs from making these investments. This risk of uncertainty is especially significant in sensitive areas such as broadcasting where public sentiment is susceptible to great fluctuations and could easily turn against a franchisee as a result of an error on its part, because of a controversial production or because an editorial comment was not to the liking of some. Revocation at will also raises the possibility of a First Amendment challenge.

"On the other hand, requiring an election for all unspecified privately funded services to the public, including cable television, not only would place a burden on the community but could prohibitively increase the start-up risks and costs or unduly delay the preparatory steps necessary for any such franchisee to begin operations. With some sound reasoning, amici argue that cable television enterprises would be discouraged from

starting or expanding in Michigan and that the enterprises already present could hold void franchises after making large private investments if the provisions of § 25 are held to apply to cable television franchises.

"Historically, cities and franchisees have relied on *Holland*. The cities, by granting franchises for cable television systems for terms of years, and the franchisees by investing millions of dollars and extensive service, have relied on what was believed to be a settled construction of the provisions of § 25. These cities, their residents and franchisees could stand to lose valuable services and unknown millions of dollars should we find plaintiff's arguments to prevail and abandon the settled construction." 406 Mich 554, 568-569.

Thus, the language used by the *White* Court strongly suggests that cable television systems may not operate in this state without having been granted a franchise. In light of the strong public policy considerations noted by the Court in *White,* we concur. Therefore, because defendants' cable television system is a public utility within the meaning of art 7, § 29, it is subject to regulation by the plaintiff township and cannot operate without a franchise. The circuit judge's contrary ruling is reversed.

We next turn to the question of whether the trial judge erred in holding that the circuit court was without jurisdiction to enjoin the operation of defendants' cable television system even if it were in violation of the plaintiff township's cable communications ordinance.

Although early Michigan law on this point appears to be to the contrary, see *Warren Twp v Raymond,* 291 Mich 426; 289 NW 201 (1939), the Supreme Court recognized in *Dearborn National Ins Co v Comm'r of Ins,* 329 Mich 107, 118; 44 NW2d 892 (1949), that a court of equity may

enjoin the violation of a statute or ordinance which provides for a criminal penalty:

"We do not agree with appellants that under the circumstances of this case the authority of the commissioner must be found solely in said section, or that equity has no jurisdiction under the circumstances on the ground that said section is a penal statute, enforcement of which must rest solely in an arrest and conviction for a misdemeanor. The existence of a penalty provision in a statute or an ordinance does not necessarily have the effect of ousting the chancery court of jurisdiction where prosecution does not afford an adequate remedy."

Similarly, in *Attorney General ex rel Optometry Board of Examiners v Peterson,* 381 Mich 445, 465-466; 164 NW2d 43 (1969), it was held that the attorney general could seek an injunction to prohibit the unlicensed practice of optometry:

"We believe the better rule and the trend of modern authority is that equity may enjoin the unlicensed practice of a profession."

"At common law, acts in violation of law constitute a public nuisance. Harm to the public is presumed to flow from the violation of a valid statute enacted to preserve public health, safety and welfare. The attorney general, acting on behalf of the people, is a proper party to bring an action to abate a public nuisance or restrain unlawful acts which constitute a public nuisance. The existence of a criminal or other penalty for the practice of a profession without a license will not oust equity from jurisdiction." (Footnote omitted.)

Although this question was not specifically raised in the case of *Mt Pleasant v Michigan Consolidated Gas Co,* 325 Mich 501; 39 NW2d 49 (1949), in that case the Supreme Court upheld the exercise of equitable jurisdiction to enforce compli-

ance with a city public utility franchise ordinance. Further, other jurisdictions which have considered this question have allowed municipalities to enjoin the operation of unfranchised cable television services. See *City of Liberal v Teleprompter Cable Service, Inc,* 218 Kan 289; 544 P2d 330 (1975), *Borough of Scottdale v National Cable Television Corp,* 28 Pa Commonwealth 387; 368 A2d 1323 (1977).

Application of these principles convinces us that the circuit court did not have jurisdiction to hear plaintiff's claim for injunctive relief. Because of the organized and continuing character of defendants' activities, criminal sanctions do not appear to provide plaintiff with an adequate remedy at law. Further, the damages in this case are speculative at best. By permitting the continued operation of defendants' unfranchised cable television service, plaintiff stands to lose fees that defendants should pay for offering cable television service and fees that plaintiff might receive from the company it has franchised if it were permitted to offer its services to tenants in the apartment buildings owned by the defendant Eyde Construction Company. As long as defendants fail to comply with the township ordinance, fees due plaintiff from defendants will be difficult to calculate; fees that might accrue to plaintiff through the presently franchised system will be impossible to determine. Therefore, because plaintiff does not have an adequate remedy at law, it would be proper for a court of equity to take jurisdiction over its complaint.

Following the submission of this case for a hearing of its merits, the United States Supreme Court released its opinion in *Community Communications Co, Inc v Boulder, Colorado,* — US —; 102 S

Ct 835; 70 L Ed 2d 810 (1982). In that case, the Supreme Court held that a municipal ordinance governing cable television franchises is not exempt from scrutiny under federal antitrust legislation. The Supreme Court did not find that an antitrust violation occurred in the case, rather, it remanded for a hearing on this issue.

In the present case, defendants do not assert that the Meridian Township cable communications ordinance violates federal antitrust law. Further, we are not inclined to pass upon this issue *sua sponte,* in view of the fact that it has neither been briefed nor are there sufficient facts in the record to enable us to decide it. We note in passing, however, that our disposition of the issues raised in this appeal is in no way intended to reflect upon the merits of a claim that plaintiff's ordinance may, in fact, violate antitrust laws. If defendants believe that such is the case, they may institute appropriate legal proceedings.

Reversed.