Edward D. NAVARRA and John H. Norris, Plaintiffs,

v.

BACHE HALSEY STUART SHIELDS INCORPORATED, Defendant.

Civ. A. No. 80–73917.

United States District Court, E. D. Michigan, S. D.

March 24, 1981.

---

Eric J. McCann, Hartman, Beier & Googasian, John H. Norris, Monaghan, Campbell, Loprete & McDonald, Bloomfield Hills, Mich., for plaintiffs.

S. Thomas Wienner, Dykema, Gossett, Spencer, Goodnow & Trigg, Detroit, Mich., for defendant.

## OPINION ON PLAINTIFFS' REQUEST FOR DECLARATORY JUDGMENT

FEIKENS, Chief Judge.

Plaintiffs seek a determination as to the applicability of the Michigan eavesdropping statute, M.C.L.A. §§ 750.539 *et seq.*; M.S.A. 28.807 *et seq.*, to the testimony of a person who has listened to a telephone conversation with the permission of one party. For the reasons discussed below, I have decided that the testimony of Mr. Norris in the arbitration proceeding would violate the statute and he would thus be subject to criminal prosecution and civil penalties.

BACKGROUND

Navarra contends that he ordered his broker at Bache to sell certain securities in his account. At a proceeding before the American Arbitration Association, Navarra called Norris as a witness to testify to the contents of a telephone conversation between Navarra and Bache concerning the order to sell. Navarra had permitted Norris to listen in on the discussion. However, Bache had no knowledge that Norris was on an extension telephone and did not consent to the monitoring of the conversation.

Bache objected to the admission of Norris' testimony based on the Michigan eavesdropping statute, M.C.L.A. §§ 750.539 *et seq.*; M.S.A. 28.807 *et seq.* The American Arbitration Association rules do not pre-

clude the introduction of such testimony, so Norris was permitted to testify. Bache preserved its rights under the statute to file a civil action for damages regarding Norris' testimony about the telephone conversation.

## OPINION

The first question is whether the federal wiretapping statute, otherwise known as Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510 et seq., preempts state law. If the federal provisions should apply, Michigan state law would be void and Norris could testify as to the contents of the conversation without criminal or civil penalties.

■ The Michigan eavesdropping statute is not preempted by federal law. For preemption to occur, there must be actual conflict between the two statutes in the same area, or there must be evidence of congressional design or intent to preempt the field. *Florida Lime and Avocado Growers v. Paul*, 373 U.S. 132, 133, 83 S.Ct. 1210, 1213, 10 L.Ed.2d 248 (1963); *Hines v. Davidowitz*, 312 U.S. 52, 61 S.Ct. 399, 85 L.Ed. 581 (1941). Neither ground for federal preemption is present.

■ As to the first alternative, there is no inconsistency in the two wiretapping statutes that would preclude their enforcement at the same time. The provisions here in question are not mutually exclusive but instead complement each other, the Michigan statute being more restrictive. The federal statute, 18 U.S.C. § 2511(1), defines the parameters in which the interception and disclosure of wire communications are prohibited. From those prohibitions are exempted those "persons . . . where one of the parties to the communication has given prior consent to such interception." 18 U.S.C. § 2511(2)(d). The Michigan statute [1] does not contain this exemption, but instead defines as a felony the

"eavesdrop[ping] upon the conversation without the consent of *all* parties thereto." (Emphasis added). M.C.L.A. § 750.539c; M.S.A. § 28.807(3). Since a state may adopt more stringent standards where it does not create an obstacle to the enforcement of federal law, this provision of the Michigan eavesdropping statute is valid. *See, e. g., Alderman v. United States*, 394 U.S. 165, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969); *Commonwealth v. Vitello*, 367 Mass. 224, 327 N.E.2d 819 (1975).

Neither is there any evidence of congressional design to preempt the description of wiretapping or eavesdropping as a criminal activity. The Senate Report on the Act explains the intended relationship between federal and state law.

No applications [for interception of wire communications pursuant to Section 2516(2)] may be authorized unless a specific State statute permits it. The State statute must meet the minimum standards reflected as a whole in the proposed chapter. *The proposed provision envisions that States would be free to adopt more restrictive legislation*, or no legislation at all, but not less restrictive legislation. (Emphasis added). S.Rep. No. 1097, 90th Cong., 2d Sess. (1968), reprinted in 2 U.S.Code Cong. & Ad.News 2187 (1968).

Additionally, the Senate indicated that state law was also applicable in civil penalties for wiretapping offenses. Its report states, "The scope of the remedy is intended to be both comprehensive and exclusive, but there is no intent to preempt parallel State law." S.Rep. No. 1097, *supra* at 2196.

One case in Michigan has interpreted the state eavesdropping statute to be coextensive with federal law. The facts in *People v. Warner*, 65 Mich.App. 267, 237 N.W.2d 284 (1975), aff'd 401 Mich. 186, 258 N.W.2d 385 (1977), differ slightly from this case

---

1. M.C.L.A. § 750.539c; M.S.A. § 28.807(3) provides that:

Any person who is present or who is not present during a private conversation and who wilfully uses any device to eavesdrop upon the conversation without the consent of all parties

thereto, or who knowingly aids, employs or procures another person to do the same in violation of this section, is guilty of a felony punishable by imprisonment in a state prison for not more than 2 years or by a fine of not more than $2,000.00, or both.

because the person who had eavesdropped in *Warner* did so without the knowledge of either party. However, the Michigan Supreme Court held that the eavesdropper violated *both* federal and Michigan law. Clearly, there could not be a violation of both laws if one preempted the other.

Similar cases have been decided in other jurisdictions. The California Supreme Court reviewed the question of federal preemption in the area of electronic surveillance. *People v. Conklin,* 12 Cal.3d 259, 522 P.2d 1049, 114 Cal.Rptr. 241 (1974), *app. dism. sub nom. Conklin v. California,* 419 U.S. 1064, 95 S.Ct. 652, 42 L.Ed.2d 661 (1974). It was noted by the court in *Conklin* that Congress usually preempts a regulatory area when it seeks to standardize a field. However, it also cited the Senate Report, *supra* at 2155, to recognize that Congress meant only "to ensure nationwide compliance with the newly declared standards in *Berger* [*v. New York,* 388 U.S. 41, 87 S.Ct. 1873, 18 L.Ed.2d 1040 (1967)], and *Katz* [*v. United States,* 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967)]". 12 Cal.3d 259, 269, 522 P.2d 1049, 1055.

The court in *Conklin* reviewed a California provision[2] that is similar to the Michigan statute questioned in this case. It held that the state law was "consistent with Federal purposes and that its more restrictive rule concerning consent was anticipated by Congress." 12 Cal.3d 259, 271, 522 P.2d 1049, 1057. I agree with that decision, and its analysis that the provision "not only meets the minimum standards but it also imposes a more restrictive rule in requiring the consent of all parties ... and, the section serves to promote the federal objective of protecting the right of privacy." 12 Cal.3d 259, 272, 522 P.2d 1049, 1057–1058.

The Kansas Supreme Court also examined the eavesdropping statute of its state in *State v. Dowdy,* 222 Kan. 118, 563 P.2d

425 (1977). The court in *Dowdy* reviewed 18 U.S.C. § 2511 *et seq.,* its legislative history, and the common law that led to its enactment. It concluded that "the only discretion left to a state in the eavesdropping area was whether to enact eavesdropping legislation more restrictive than the provisions of the federal act." 222 Kan. 118, 122, 563 P.2d 425, 428.

The Massachusetts wiretapping statute also has been extensively compared to the federal provisions in *Commonwealth v. Vitello, supra,* 327 N.E.2d at 835–845. The court first reviewed the standards for preemption, observing that:

> Preemption, however, is not to be lightly inferred where Congress has allowed for concurrent State regulation as long as the State statute is substantially similar in design and effect to the federal enactment or where the State statute is, according to Congressional directive more restrictive. P. 835, citing *Askew v. American Waterways Operators, Inc.,* 411 U.S. 325, 93 S.Ct. 1590, 36 L.Ed.2d 280 (1973).

Although it did not analyze any provisions directly analogous to the Michigan statute here in question, the more restrictive Massachusetts wiretapping sections were sustained as valid by the court in *Vitello.*

As I have previously noted, the Michigan statute is more restrictive than the federal act and is similar to it in purpose and design. For these reasons and others set forth in this section, I conclude that M.C. L.A. § 750.539c is not preempted by federal law.

The second question that plaintiffs raise is whether the Michigan statutes, which provide criminal and civil penalties, M.C. L.A. § 750.539e and § 750.539h; M.S.A.

---

**2.** The California Penal Code section 631, subdivision (a), provides in pertinent part:

Any person ... who wilfully and without the consent of all parties to the communication, or in any unauthorized manner, reads or attempts to read, or to learn the contents or meaning of any message, report, or commu-

nication while the same is in transit or passing over any such wire, line, or cable ... or who aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above in this section, is punishable by a fine ... or by imprisonment.

§ 28.807(5) and § 28.807(8),[3] apply to *private* persons who testify in *civil* cases.

On its face, the statute does not distinguish between civil and criminal trials. Neither does it specify that only persons acting in their official capacity are within its purview. Rather, the statute simply reads, "*Any* person who *uses or divulges* any information". (Emphasis added). The language is plain. No one who has eavesdropped on a telephone conversation may reveal anything that he or she heard if it was done in violation of the Michigan eavesdropping statute.

■ The purposes of the wiretapping and eavesdropping statutes bear on my decision in this case. The statutes were enacted to protect an individual's right to privacy. *See generally, Katz v. United States, supra*; S.Rep. No. 1097, *supra*. If an individual were permitted to divulge the information learned through an illegal eavesdropping, the spirit of the statutes would be totally thwarted. Justice Stewart, in *Katz*, differentiates between the protections afforded by the Fourth Amendment and those provided by the states.

[T]he protection of a person's *general* right to privacy—his right to be let alone by other people—is, like the protection of his property and of his very life, left largely to the law of the individual States. (Emphasis in original, footnotes omitted). 389 U.S. pp. 350–351, 88 S.Ct. pp. 510–511.

The Fourth Amendment protections afforded by *Katz*, and their subsequent codifications in the federal wiretapping statutes, protect an individual from governmental intrusions without the required antecedent procedures to establish probable cause to suspect criminal activity that justifies the intrusion on the individual's right to privacy. The federal statute allows for a limited risk on the part of conversants—that one of them may permit another individual to be a party to their discussion. However, the Michigan statute affords an individual more protection than the federal statute by protecting the person's "general right to privacy".

Case law substantiates my position on this issue. In *Nardone v. United States*, 302 U.S. 379, 58 S.Ct. 275, 82 L.Ed. 314 (1937), the issue of admissibility of evidence obtained in violation of Section 605 of the Federal Communications Act[4] was addressed. Section 605 contains language similar to that of the Michigan statute that I must examine in this case: "no person not being authorized by the sender shall intercept any communication and divulge or publish the existence, contents, substance, purport, effect or meaning of such intercepted communication to any person; ...". In analyzing whether testimony was included in the definition of "divulge", Justice Roberts wrote:

We nevertheless face the fact that the plain words of § 605 forbid anyone, unless authorized by the sender, to intercept a telephone message, and direct in equally clear language that "*no person*" shall divulge or publish the message or its substance to "*any person.*" To recite the contents of the message in testimony before a court is to divulge the message. The conclusion that the act forbids such testimony seems to us unshaken by the government's arguments. (Emphasis in original). P. 382, 58 S.Ct. p. 276.

---

3. M.C.L.A. § 750.539e; M.S.A. § 28.807(5), provides that:

Any person who uses or divulges any information which he knows or reasonably should know was obtained in violation of sections 539b, 539c, or 539d is guilty of a felony, punishable by imprisonment in a state prison not more than 2 years, or by a fine of not more than $2,000.00.

M.C.L.A. § 750.539h; M.S.A. § 28.807(8), provides that:

Any parties to any conversation upon which eavesdropping is practiced contrary to this act shall be entitled to the following civil remedies:

(a) An injunction by a court of record prohibiting further eavesdropping.

(b) All actual damages against the person who eavesdrops.

(c) Punitive damages as determined by the court or by a jury.

4. This act was superseded by Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. § 2510 *et seq.*

See also *Lee v. Florida*, 392 U.S. 378, 88 S.Ct. 2096, 20 L.Ed.2d 1166 (1968). With the necessary modification required by the language forbidding eavesdropping without the consent of both parties, I agree.

Plaintiffs have relied on *People v. Livingston*, 64 Mich.App. 247, 236 N.W.2d 63 (1975), in support of their argument that Norris' testimony is outside the scope of the Michigan statute. The court in *Livingston* decided that the Michigan state legislature had not enacted an exclusionary rule as a portion of its eavesdropping statute and, therefore, held that the tapes obtained in violation of that statute were admissible. Similarly, in this case, Norris may decide to testify and that testimony may be admitted. However, the court went on to note that the plaintiffs still had potential criminal and civil liability for their statutory violation. 64 Mich.App. at 255, 236 N.W.2d 63. Although the decision supports plaintiff's contention that Norris' testimony is admissible, it clearly states that eavesdropping, even with the permission of one party, is within the scope of the statute. Defendants have never challenged the testimony of Norris in this action, but only have sought a determination of his liability in the event he decides to testify.

CONCLUSIONS

It is clear that the legislative history of the federal wiretapping and eavesdropping statute, 18 U.S.C. §§ 2510 *et seq.*, indicates that the Act was never intended to preempt parallel state law. Neither is the doctrine of preemption applied because the two statutes are conflicting in their provisions and scope. Therefore, the Michigan provision that requires the consent of both parties before their conversation may be monitored by others is valid.

 Furthermore, the Michigan statute meets the purposes that are expressed in *Katz v. United States, supra,* and the federal Act. Since, by the clear and unambiguous language of the statute, the state has expressed an intent to further protect the privacy of its citizens, I hold that Norris' testimony in this civil action would be in violation of the Michigan eavesdropping statute. If he decides to testify, he will subject himself to the criminal and civil penalties contained in those provisions.

An appropriate order may be submitted.