FOUR FLAGS CABLEVISION v MAYNARD

Docket No. 79294. Submitted May 7, 1985, at Grand Rapids.—Decided August 19, 1985.

Plaintiff, Four Flags Cablevision, brought an action in the Berrien Circuit Court seeking a permanent restraining order against defendant, L. C. Maynard, doing business as Maycom Communications Products, Inc., to prevent the sale of a decoding device which enables the owner of a television set who has subscribed only to plaintiff's basic cable television service to receive the programming of plaintiff's premium cable services without paying the appropriate fees. The trial court, Chester J. Byrns, J., issued an order and injunction to halt such sales and further determined that the pertinent statute, MCL 750.540c, does not violate the Commerce Clause of the United States Constitution, is not void for vagueness and does not violate the Title-Object Clause of the Michigan Constitution. Defendant appeals. *Held:*

MCL 750.540c is not unconstitutional. 1982 PA 287 which amended the act does not violate the legislative intent of the act as originally enacted. The act, as amended, does not deny due process. Defendant's claim that the act violates the Commerce Clause was not preserved for appeal and was, in any event, deemed a frivolous claim by the Court of Appeals.

Affirmed.

TELECOMMUNICATIONS — DEVICES FOR AVOIDING CHARGES — CONSTITUTIONAL LAW — TITLE-OBJECT CLAUSE — DUE PROCESS.

The Penal Code section concerning devices for avoiding charges for telecommunications services and the manufacture, use, possession and sale of such devices is constitutional; the 1982 amendment to the act did not violate the legislative intent of the act as originally enacted; the statute is not so vague as to render its application uncertain or to deny due process (MCL 750.540c; MSA 28.808[3]; 1982 PA 287).

REFERENCES FOR POINTS IN HEADNOTE

Am Jur 2d, Telecommunications § 205.5.

Criminal prosecutions for use of "blue box" or similar device permitting user to make long distance telephone calls without incurring charges. 78 ALR3d 449.

*Thomas K. Byerley,* for plaintiff.

*James S. Ford, Jr.,* for defendant.

Before: SHEPHERD, P.J., and R. M. MAHER and
W. R. PETERSON,* JJ.

W. R. PETERSON, J. Plaintiff is in the business of
transmitting signals through coaxial cables and
offers a service commonly known as cable televi-
sion for which it has a nonexclusive franchise to
operate within certain areas. Unlike public UHF
or VHF television broadcasters, whose transmis-
sions may be received without charge by any
member of the public who owns a television set,
plaintiff's programming cannot be received by the
owner of a television set without paying for plain-
tiff's coaxial cable service and a converter.

Plaintiff provides various program services at
various prices to television set owners who wish to
subscribe thereto, *i.e.,* "basic" cable service and
"premium" cable services. To prevent subscribers
to the basic cable service from receiving the pre-
mium services for which they have not subscribed
and paid, plaintiff scrambles (distorts) the picture
transmitted for premium services by a coding
process.

This case involves the sale by defendant of a
decoding device which enables the owner of a
television set who has subscribed only to plaintiff's
basic cable service to receive (steal) the program-
ming of plaintiff's premium cable services without
paying therefor. Plaintiff took offense at such con-
duct, sought a permanent restraining order
against defendant's sale of the decoder and pre-
vailed.

The parties submitted the matter to the trial

---

* Circuit judge, sitting on the Court of Appeals by assignment.

judge on an agreed statement of facts, stipulating that the constitutionality of MCL 750.540c; MSA 28.808(3) was the sole issue, *i.e.,* did 1982 PA 287 amending the act violate the legislative intent of the act as originally enacted, and does the act as amended deny defendant due process?[1] It provides as follows, the second paragraph being the pertinent addition of 1982 PA 287:

"Any person who (1) makes, possesses, uses, or knowingly participates in the use by another of any instrument, apparatus, equipment, or device designed or adapted for use (a) to fraudulently avoid the lawful charge for any telecommunications service in violation of this section or (b) to conceal the existence or place of origin or destination of any telecommunications service or to interconnect to 2 telephone lines so as to permit a person calling to 1 telephone line from or through a third telephone line to communicate with a person calling to the other telephone line from or through a fourth telephone line if that interconnection is not authorized by the supplier of the telephone service, or (2) sells, gives, or otherwise transfers to another, or offers or advertises to sell, give, or otherwise transfer any instrument, apparatus, equipment, or device described in clause (1), or instructions or plans for making or assembling the same, is guilty of a misdemeanor, punishable by a fine of not more than $500.00, or imprisonment for not more than 1 year, or both, if the person engages in that conduct under circumstances evidencing an intent to use or employ the instrument, apparatus, equipment, or device, or to allow the same to

[1] Defendant does not here pursue the claim made in the trial court that the act violates the Commerce Clause, US Const, art I, § 8. He attempts to argue here that the statute creates a monopoly and results in an unfair restraint of trade in violation of his constitutional right to engage in trade. That question was not raised below and is not properly before us. It is, in any event, a frivolous claim, see *Meridian Twp v Roberts,* 114 Mich App 803; 319 NW2d 678 (1982), *White v Ann Arbor,* 406 Mich 554; 281 NW2d 283 (1979), and cases arising under the Federal Communications Act, 47 USC 605, *e.g., Ciminelli v Cablevision,* 583 F Supp 144 (ED NY, 1984), and *National Subscription Television v S & H TV,* 644 F2d 820 (CA 9, 1981).

be used or employed for a purpose described in clause (1)(a) or (1)(b) or knowing or having reason to believe that the same is intended to be so used, or that the plans or instructions are intended to be used for making or assembling that instrument, apparatus, equipment, or device.

"As used in this section and section 540d, 'telecommunications service' means any service, transmission, emission, or reception of signs, signals, writings, images, and sound or intelligence of any nature by wire, cable television system, closed circuit coaxial cable communications system."

Defendant characterizes the act as an "eavesdropping statute", intended by the Legislature in its "original" enactment in 1931 PA 328 solely to protect personal privacy. In support of this argument he cites *People v Warner,* 401 Mich 186; 258 NW2d 385 (1977), and *Navarra v Bache Halsey Stuart Shields, Inc,* 510 F Supp 831 (ED Mich, 1981). The 1982 amendment, he says, is not in furtherance of privacy, renders the meaning of the act ambiguous and is unconstitutional.[2]

His efforts to overcome the presumed constitutionality[3] of the act are without merit, beginning with his description of § 540c as originating in 1931. 1931 PA 328 was a codification of the state's criminal laws,[4] Chapter LXXXII of which dealt

---

[2] Const 1963, art 4, § 24 provides:

"No law shall embrace more than one object, which shall be expressed in its title. No bill shall be altered or amended on its passage through either house so as to change its original purpose as determined by its total content and not alone by its title."

[3] *People v Yeo,* 103 Mich App 418; 302 NW2d 883 (1981).

[4] The codes are viewed under Const 1963, art 4, § 24, by their codifying purpose and not by the multiple objects of the various sections, see *Advisory Opinion re Constitutionality of 1972 PA 294,* 389 Mich 441, 463; 208 NW2d 469 (1973):

"Emphasis is given to the fact that the subject matter constitutes a code and that inherently the scope of a code must be broad enough to encompass the various facets necessary to the drafting of a unified law. If we fail to permit such a design codes may not be enacted in

with offenses pertaining to telephone and tele-
graph systems and contained only two sections,
§§ 539 and 540. Section 539 originated in 1853 PA
68, was amended by 1901 PA 187, and was further
amended by 1966 PA 319. It was a portion thereof
which was characterized in *Warner* and *Navarra*
as being Michigan's eavesdropping statute.

Section 540 of the 1931 codification originated as
1893 PA 113, the title to which read:

"An act to provide a penalty for malicious injury to
or use of telegraph and telephone instruments and the
unauthorized reading or copying messages therefrom."

The content of 1893 PA 113 (later § 540) dealt not
only with personal privacy but also with "business,
sporting, commercial or other news reports", bar-
ring their reading, copying or unauthorized use.
The 1982 amendment to § 540c was thus a contin-
uation of the original intent of 1893 PA 113 and
merely insured its application to modern technol-
ogy. As the trial judge noted in speaking of the
amendment, " 'telecommunications' is germane,
broadly speaking to 'telephone and telegraph', be-
ing another form of communication by electrical
transmission via wire or cable".

Neither do we find merit in defendant's claim
that the statute is so vague as to render its appli-
cation uncertain and to deny due process. It can-
not be better stated than it was in the excellent
opinion of the trial judge:

"The plain common sense meaning of the prohibition
'to fraudulently avoid the lawful charge for any tele-
communications service' as used in the statute is to
prohibit the very conduct engaged in by defendant.
Applied to the facts of this case, the phrases challenged

Michigan so long as the 'one object' limitation is present in the
constitution."

mean that it is a misdemeanor to sell a decoder to be used to receive 'premium' cable service without paying the fee charged by the cable system to receive such service in a viewable condition. Plain meaning indicates that selling a device so another can receive the signal without paying the fee charged to a customer who honestly orders and receives the service is prohibited."

Affirmed.